## R. K. SMITH v. THE STATE.

1—To charge a person with being " a hireling murderer," if the charge be
falsely and maliciously made, is slander, for which a civil action will lie ;
and if it be written and published, it becomes a libel, and is an indictable
offense by the Penal Code of this State.

2—When libelous matter is written, or printed, or published, malice or an
intent to injure is presumed, and the burden of proof is thrown on the
defendant to show that the utterance or publication was made under cir-
cumstances bringing it within the class of privileged communications
defined in the Code.

3—The truth of a statement charged as a libel is admissible in evidence, or
as a defense, only in the few cases specially provided for in the Code.

4—Simply because a communication is confidentially made, does not place it
within the class of privileged communications.

5—The writing of a letter and the deposit of it in a post office for transmission
to the party addressed, constitute a publication of it within the law of
libel.

APPEAL from Galveston. Tried below before the Hon. W.
R. Fayle.

The appellant was indicted in the Criminal Court of the
county of Galveston, at its July term, 1869, for the publication
of a libel against B. Rush Plumly.

The matter charged as a libel was a letter to one F. W.
Read, in the following terms :

"July 13th, 1868.

"Mr. F. W. READ:

"*Dear Sir*—I enclose you a letter to Louis Bourgoise ;
give it to him yourself, and soon. I want him to get a negro,
or some one else, to thrash Plumly, and to do it well. He is a
hireling murderer and a coward.

"See Louis, and if he attempts it, tell him to be prepared
for the worst.

"Truly yours,

"ROB. K. SMITH."

The defendant pleaded not guilty.

F. W. Read, witness for the State, testified that he got the

letter out of the Galveston post office some four days after its date; that it was in the handwriting of the accused, and is subscribed with his signature; that the "Plumly" mentioned in the letter was B. Rush Plumly; that witness never showed the letter to but one person, and did not authorize him to use it; that witness regarded it as a confidential letter from a friend, intended for no one but himself.

There was other evidence, but of no particular consequence in the case.

The defendant asked the witness Read if he had ever circulated the letter or posted it in a public place, or ever caused it to be done; and also how the letter got out of his (Read's) possession, and if it was not stolen from him by other parties. On objection of the district attorney, these questions were disallowed by the court, and the defendant excepted.

The jury found the defendant guilty, and assessed his punishment at a fine of two hundred and fifty dollars.

Judgment was rendered accordingly, and the defendant gave notice of appeal.

So far as the transcript shows, no attempt was made by the accused to prove the truth of his letter. He offered no witnesses.

*R. K. Smith*, in *propria persona.*—Upon the trial the defense endeavored to ascertain, by a question to the principal witness, Mr. Read, the gentleman to whom the letter was written, whether, whilst that letter was under his control, the said letter was ever circulated or posted in any public place? which question the judge would not permit to be answered. And these other questions: How did it get out of your possession? Was it stolen from your possession? Both of which questions were overruled by the judge, and the witness was not permitted to state the facts of the case.

Now, if the court please, we contend that this conviction was contrary to the law and the evidence. That no offense, as charged in the indictment, has been proven. That the publi-

cation there charged against appellant has been positively denied by the witness for the State. And it is further shown that appellant was anxious to recover said letter to prevent circulation and publication.

The principal witness for the State also says he regarded the alleged libel intended for his eye alone; and we contend that we had not a fair trial. Had we have been permitted to question the witness we could have shown the entire and complete innocence of the appellant, and justification for the language contained in that confidential communication, for it was in reply to a letter from witness that Plumly had made a murderous assault upon my servant with a slung shot during my absence, all of which the court prevented us from showing. The questions asked were relevant and lawful questions, and had an investigation of all the facts in this case been permitted that were legal and relevant, and which these questions would have brought out, the appellant could not have been convicted on the facts alone. Nor could he have been convicted under any circumstances, but for the illegal charge of the judge to the jury, that "issuance and circulation of a libelous article are identical." In other words, when the letter was dropped into the mail at Austin it was circulated. If this be true the offense was committed in Travis county and the court had no jurisdiction. There is no denial that the appellant wrote the letter and mailed it to a private friend; but there is positive denial that he ever published or circulated it, or connived at either, so as to bring a confidential communication before the world. Besides all this, the record itself alleges in the indictment a fact which is an absolute impossibility. The indictment sets forth that the libel was written one year *after* the libel was published.

The judge also, in his charge to the jury, directed the jury, after telling them that "issuance and circulation were identical," that "they must take their law from this charge;" and then goes on to tell them that, "if, from the testimony, they find that the defendant did write the letter, as alleged in the

indictment; that he did issue, circulate, and publish the same by remitting it through the mail to F. W. Read," * * * " they will render their verdict of guilty." Here is a law that never had an existence, laid down by a court to direct a jury. It is equivalent to telling the jury that there is nothing secret or sacred in a seal; that the United States mail is a publication office, and no confidential communication can be made by one man to another through that medium.

I will not infringe upon the time of this court by pointing out all the absurdities in this most remarkable charge. I will not insult the intelligence and learning of this court by a further dissection of this incongruity that has been dignified as a charge. But I will turn to this honorable, the Supreme Court, as the last tribunal to remedy all wrongs perpetrated upon the people of this State, whether in malice or ignorance, in full confidence that the judgment of the court below will be reversed and the case dismissed.

*E. B. Turner*, Attorney General, for the State.

LINDSAY, J.—To charge a person with being "a hireling murderer," if falsely and maliciously made, is slander, for which a civil action would lie against the utterer. If it be written and published, it becomes a libel, which is made an indictable offense by the Criminal Code of Texas, as it was at the common law. When the defamatory or libelous matter is written or printed and published, malice, or the intent to injure, by the Code, is presumed, and the burden of proof is thrown upon the party charged, to show that the utterance or publication was made under such circumstances as to bring it within the class of privileged communications. Such communications are allowable from the peculiar relations of the parties, or from considerations of public policy. But, unless upon the trial the evidence discloses that the libelous matter charged falls within the privileged communications, the malice or intent to injure is presumed. Nor can this be rebutted by proof of

the truth of the defamatory statement on the trial under indict-
ment.    It is only in prosecutions for the publication of papers
investigating the conduct of officers, or of persons acting in a
public capacity, and where the matter is proper for public
information, that the truth may be given in evidence.    In libels
upon private individuals, however true the charges may be,
their publication against private individuals incites and pro-
vokes the mischief designed to be repressed by the public
prosecution of libels.

The publication of a libel and its circulation, is made when
it is written, printed, and sent and delivered, either to the per-
son defamed or to any other person, unless the matter so sent
and delivered comes under the class of privileged communica-
tions.    There is nothing in this record to show that this charge
and publication were justified by any such peculiar relations or
considerations of public policy.    Simply because a communi-
cation is confidentially made, it does not place it in the class of
privileged communications.    There must be some considera-
tions of moral duty or of public policy connected with it, in
order to range it in the class of privileged communications.
Mere confidential communications of such a character are,
therefore, always made at the peril of the publisher, if they
fail to come within that defined class.    The exception, there-
fore, taken to the ruling of the court in excluding the evidence
offered by the defendant, cannot avail.    The fact of publica-
tion and of circulation was established incontestibly, by wri-
ting the letter, directing it and putting it in the mail, to be
transmitted to the county of Galveston, where the bill of
indictment was found.    The proof, if introduced, would have
been wholly immaterial, and would not have conduced to rebut
the evidence of publication and circulation already made mani-
fest, and by the interrogatories propounded to the witness, the
answers to which were excluded by the court, was a confession
of the writing and publication of the libel.    The common law
principles governing cases of libel are fully adopted in our
Criminal Code.    And when an individual either writes or prints

a libel against a private person, or even has such libel in his possession, as a moral duty he had better burn it, and for perfect legal security he will always find his advantage in such a disposition of it.

There being no errors in law committed by the court on the trial, and the jury being made by the Criminal Code the triers of the questions, both of the malice or intent to injure, and of the publication, this court would not be justified in disturbing the verdict. The judgment of the Criminal Court is therefore affirmed.

Affirmed.