[No. 2929.]

## WILLIAM COULSON *v.* THE STATE.

1. LIBEL—PLEADING—INDICTMENT.—It is permissible in some cases, where the offense charged is predicated upon an instrument in writing, to set forth the substance and effect, or purpose of the instrument, without declaring upon it by its tenor or in *hæc verba,* as, for instance, in perjury. But, as a general rule, whenever an instrument in writing enters into an offense as a part or basis thereof, or where its proper construction is ma-

terial, the instrument itself, *hæc verba*, should be set out in the indictment. The offense of libel is included in the latter class of cases, and an indictment for that offense, to be sufficient, must profess, upon its face, to set forth an accurate copy of the alleged libel in words and figures; otherwise, it is bad on motion to quash, or in arrest of judgment. See the opinion *in extenso* on the subject.

2. SAME—CASE STATED.—After alleging the writing and circulation of the instrument, the indictment avers that the said statement so made was then and there a libel, etc., and, "in substance, words and figures as follows, to wit," etc. Then follows the instrument in quotation marks, and the indictment concludes as follows: "The grand jurors, upon their oath, do say that the foregoing is the language and substance and meaning of said false and malicious statement, as near as they can give," etc. *Held*, that notwithstanding the writing appears to be set out in *hæc verba*, the concluding part of the indictment, *i. e.*, "the foregoing is the language and substance and meaning of said false and malicious statement as near as they can give," etc., manifests the fact that the grand jury only attempted the substance and meaning as near as they could, and not the literal language of the alleged libel, which alone was sufficient.

3. SAME.—The laws of this State do not recognize, as an exception to the general rule that the libelous matter must be set forth *hæc verba*, the omission of the literal language of the libel when it is indecently obscene. If it be such as to invite the jurisdiction of the courts of this State, however obscene, it must be properly pleaded.

4. SAME.—The writing of a letter and the deposit of it in the post office for transmission to the party addressed constitute the publication of a libel within the meaning of the law, provided such letter be of such character that, if made public, it would affect the reputation of the party about whom it was written.

5. SAME.—The distinction between libel at common law and libel as defined by our statute is, that libel at common law is punishable because of its tendency to provoke a breach of the peace, while under our statute it is punishable as well because of its tendency to injure the reputation of a person. Such being the case, if this intent is averred, the indictment is sufficient, without the additional averment of the tendency and intent to provoke a breach of the peace.

APPEAL from the County Court of Collin. Tried below before the Hon. T. C. Goodner, County Judge.

The indictment attempted to charge the appellant with the offense of writing and publishing a libel against one James Jobe, in Collin county, Texas, on the fourteenth day of October, 1882.

James S. Jobe was the first witness introduced by the State. He testified that on the fourteenth day of October, 1883, James Boyd came to his, witness's, store and handed witness three dol-

lars in money and a note, which he said the defendant had given him with the request that he deliver the same to witness. Boyd stated at the time that he did not know the contents of the note; that when the defendant handed it to him, he requested that Boyd should not under any circumstances read it; and that he had not done so. Boyd then left the store. After Boyd left, witness opened the note and started to read it, but when he saw how it commenced, he asked McDaniel, who was present, whether or not he could read. McDaniel replied that he could, and he and witness read the note together. Albert Hill was present at this time. Witness and defendant had been in business together. Witness had seen the defendant write, and thought he knew the defendant's handwriting. It was the fixed opinion of the witness that the paper exhibited was the same paper handed him by Boyd, and that the same is in the handwriting of the defendant. Witness carried the paper several months and then gave it to the county attorney. Defendant was owing the witness three dollars, and that was the amount enclosed in the note.

Cross-examined, the witness stated that no one saw or read the note after Boyd delivered it in the store until witness showed and read it to McDaniel. Witness had since shown it to several parties.

James Boyd was the next witness for the State. He testified that he knew both Jobe and the defendant. Some time during the year 1882, the defendant handed him three dollars in money with the request that he hand it to James Jobe. Witness and defendant were then in the defendant's store. In a few moments after handing witness the money defendant asked for it back, and requested witness to wait on him a minute. He then went behind his desk and remained a few minutes. When he returned he handed the witness a note, enclosing the three dollars, and requested the witness to hand the note and money to Jobe, but on no account to read the note. Witness took the note just as it was handed to him, folded over the money, walked over to Jobe's store and delivered it to Jobe. Witness did not open or read the note, nor did the defendant apprise him of its contents. Witness knew nothing of the contents of the note when he handed it to Jobe. He had never, until on this trial, seen the note since. Witness was not familiar with defendant's handwriting, and could not testify as to the identity of the note ex-

hibited and the one he delivered to Jobe for defendant, one way or the other.

Cross-examined, the witness said that the three dollars sent by the defendant were on account of a claim made by Jobe for assisting in making a coffin for the defendant's child. The child had died a short time before, very suddenly. On its death, defendant sent for witness and requested him to see to having a coffin made. Witness started to Bryant's house to get him to make the coffin, but met Bryant in Jobe's store. He asked Bryant to make the coffin, told him that the pay would be forthcoming, and that he, witness, had some lumber and tools he could use. At this point Jobe spoke up and said that Bryant could use his shop and tools; that he had some lumber and would help Bryant make the coffin. Jobe said this as though his relations with defendant were perfectly pleasant, though they had been on bad terms for at least a year. Witness remarked to Jobe: "That is right. You are acting like a man. I am glad to hear you talk in that way, and to see you lay aside your quarrels when you find a man in distress." Jobe, at that time, said nothing about charging for what he was to do, and witness thought he was proposing merely to perform a neighborly act. Witness did not ask Jobe to assist in making the coffin, nor did he say anything to Jobe about payment for the work. The coffin was made, and Bryant made out his bill for seven dollars, which the defendant paid. Jobe afterwards made out a bill against the defendant for four dollars, which at first the defendant refused to pay. Witness had never told defendant of Jobe's connection with the construction of the coffin. When defendant refused to pay the bill, Jobe said that he would make it out of witness, as the witness had employed him. A few days later the defendant called witness into his store and asked him to see Jobe and find out the amount of his charge, which he would then pay if he had money enough. Witness saw Jobe and got him to reduce his bill by one dollar. He then returned to defendant, who sent the three dollars and the note as stated.

James Jobe, recalled, testified for the State that Boyd engaged Bryant to make the coffin as he, Boyd, passed witness's store on his way to defendant's house. Boyd had not been to defendant's house when he first spoke to Bryant about making the coffin. Bryant told Boyd that he would require assistance in making the coffin. Boyd returned in a short time and re-

quested witness to assist Bryant in making the coffin, and said that he would see witness paid. The labor and material furnished by witness was reasonably worth three dollars. In addition, witness gave Bryant his supper, lodging and breakfast, for which he charged nothing. Witness first made out his account for four dollars.

County attorney Beverly testified that the instrument exhibited was the one handed to him by the witness Jobe, and that it had been in his possession ever since the last term of the district court, when he received it. The instrument was then read in evidence. It was as follows, a dash being here substituted for a very indecent word:

> "Lake mill tex
> "Oct 14 82

"Mr James Jobe

"Youre Dam niger sun of abitch iwill send the money to you Youre loe down black harted dam rascal Yoe haint Nothen But Dam ——. You hant fit to liv in White setelment God Dam Youre Black sun of abitch."

The motion in arrest of judgment and the motion for new trial brought in review the questions discussed in the opinion.

*K. R. Craig,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. The appeal is from a judgment of conviction for making and circulating a libel. Motions to quash and in arrest of judgment were made, in both of which the sufficiency of the indictment was called in question, "because said indictment does not set out the tenor of the instrument alleged to have been written and circulated by the defendant," and "because it appears from said indictment that the grand jury only attempted to give the substance and meaning and such portions of the language of the instrument as from their information they were able to give, and the indictment fails to assign any reason for not giving a literal copy of the instrument, or to state what the extent of the information of the grand jury was on the subject."

Omitting the formal portions, the allegations of the indict-

M

ment are that defendant "did then and there unlawfully, wilfully, corruptly, maliciously, make, write and circulate a certain false, scandalous, malicious and defamatory statement in writing to, of and concerning one James Jobe, said statement then and there affecting the reputation of said Jobe, and being then and there made, written and circulated with the malicious intent on the part of said Coulson to injure said James Jobe, and the natural consequence of which was to injure said Jobe. Said statement so made as aforesaid being then and there a libel, and being, in substance, words and figures, as follows, to wit." Here the instrument is set forth in quotation marks (which we omit on account of its obscenity), after which follows this allegation: "The grand jurors aforesaid upon their oaths do say that the foregoing is the language and substance and meaning of said false and malicious statement as near as they can give," etc.

With regard to some offenses, where the offense is predicated upon an instrument in writing, it is permissible, in criminal pleading, to set forth the substance and effect, or purpose, of the instrument, without declaring upon it by its tenor or in *hœc verba*, as, for instance, in perjury (*Gabrielsky* v. *The State*, 13 Texas Ct. App., 436), and in swindling (*Baker* v. *The State* 14 Texas Ct. App., 337); but, as a general rule, whenever an instrument in writing enters into an offense as a part or basis thereof, or where its proper construction is material, the instrument itself, *hœc verba*, should be set out in the indictment. (*White* v. *The State*, 3 Texas Ct. App., 605.)

As was said in the case of *The State* v. *Townsend* (86 N. C., 675), "according to the current of authorities, beginning with the oldest and extending to the latest, and almost wholly unbroken, libel belongs to that class of cases in which it is held to be absolutely necessary to set out in the indictment the alleged libelous matter according to its tenor. (*Rex* v. *Burr*, 12 Mod., 218; *Wood* v. *Brown*, 6 Taunt., 618; 1 Russell, 252; 2 Bish. Crim. Proc., sec. 744; *The State*, v. *Sweeney*, 10 Sergt. & R., 173; *The State*, v. *Wright*, 1 Cush., 46; *The State* v. *Brownlow*, 7 Hump., 63; *Whittaker* v. *Freeman*, 1 Dev., 271.) The reason given for this is that the court may be able, from an exact knowledge of the contents of the publication, as seen in the record, to form its judgment thereon, and that the accused may, if he pleases, demur, and thus have the opinion of the court of a question of law

upon the sufficiency of the matter to constitute libel, and thereby avoid submitting it as a mixed question to the jury."

In *Brownlow* v. *The State* (7 Humph., 62), the indictment, which was quite similar upon the point in question to the one before us, charged that the libel " contained amongst other things the following false, malicious and libelous matters and things according to the tenor and effect following, that is to say," it was held that this averment professed to set forth the substance, and not the words of the libel, and therefore not valid. "An indictment for a libel must profess on its face to set forth an accurate copy of the alleged libel in words and figures. If it does not, it will be held insufficient on demurrer or in arrest of judgment. The indictment will not be valid if it professes to set forth the libel according to its substance or effect." (See Archbold's Crim. Pl. and Prac., vol. 2, p. 1038 and note.) And in *Commonwealth* v. *Wright,* it was held that marks of quotation used in an indictment for libel to distinguish the libelous matter are not sufficient to indicate that the words thus designated are the very words of the alleged libel. (1 Cush., 46.)

"An indictment which charges that the libel is as follows, and then sets it forth *verbatim,* with sufficient innuendos, alleges the libel with sufficient certainty." (*Clay* v. *People,* 86 Ill., 147.) And in *The State* v. *Smith,* 7 Lea (Tenn.), 249, it was held that an indictment which charges the matter of the libel to be a letter set out in full in the indictment, " which said libel is in substance as follows, to wit," is sufficient. The court says, in distinguishing that case from Brownlow's case, *supra:* "While the words 'in substance' are used, yet it clearly and distinctly appears that they do not limit, nor were they intended to limit, the statement of the entire libelous matter complained of to anything less than the entire publication. On the contrary, the entire publication is set out."

We are clearly of opinion that the rule enunciated in the Brownlow case is the correct one in conformity with the weight of authority, and it is unnecessary for us to say whether the ruling in the Smith case is reconcilable with it or not upon the ground stated, viz., that the word "substance" does not characterize the allegation where the writing is set out *verbatim.* (2 Archbold's Crim. Pl. and Prac., 8 ed., top p. 1033, and note.)

In the case before us the writing appears to have been set out *hæc verba,* but the following averment, that "the foregoing is the language and substance of and meaning of said false and

malicious statements as near as they (the grand jurors) can give," manifests the fact that, to say the least of it, the grand jury have attempted the substance and meaning as near as they could, and are not certain that they have done so, much less that they have given the language literally.

The only exception to the rule that the libelous matter must be set forth *hæc verba* is where the obscenity of the language would excuse its reproduction in the pleadings. And with regard to this exception Mr. Bishop says: "The avoiding of obscene allegations in the record, breeding corruption, is deemed an adequate necessity to excuse the setting out the words of an obscene libel. The indictment should give such a description of them as decency permits; then if it states the reason for omitting to recite them it will be sufficient." (1 Bish. Crim. Proc., 3 ed., secs. 496, 497.)

We do not believe the reason stated for the exception a good one. If the matter is one necessary to be determined by the courts under the law, then the law which requires that it be brought before its tribunals recognizes no authority of modesty or sentimentality to interfere with the fixed rules it has prescribed for the proper prosecution of offenders. We are of opinion, for the reasons given, that the indictment in this case was insufficient, and that the motions to quash, and in arrest of judgment, were well taken and should have been sustained.

There is another matter growing out of this record, and affecting the sufficiency of the indictment, on the motion in arrest, which it may be well to notice. It is made to appear that the libelous instrument is a private letter written to the prosecutor, Jobe, by appellant, and not shown by appellant to any one, and not intended by him to be seen by any one but Jobe.

In *Smith* v. *The State*, 32 Texas, 594, it is held that "the writing of a letter and the deposit of it in a postoffice for transmission to the party addressed constitute a publication of it within the law of libel." Mr. Bishop says: "One publishes a libel who sends it to a single individual." (2 Bish. Crim. Proc., 3 ed., sec. 800.) And this, we are of the opinion, is the law with us, provided the private letter or instrument be of such character as that, if made public, it would affect the reputation of the party about whom it was written. The question here is as to the sufficiency of this indictment to charge libel, based upon a private letter sent to a private individual.

There is a distinction between libel at common law and libel under our penal code. At common law libel was punishable solely on account of its tendency to provoke a breach of the peace (1 Bish. Crim. Law, 7 ed., sec. 591), and, where common law prevails, "the State takes notice of a libel against a *private individual,* where the language is mere defamation of himself only, because it tends to a breach of the peace. * * * If the libel is contained in a *letter* sent to the person libeled only, an averment (in the indictment) is necessary, because the law does not presume that the same temptation to violence will follow as in the case of public abuse, and it therefore requires the tendency and intent to be proved, and, to be made the subject of proof, they may first be averred." (*The State* v. *Henick,* 3 Crim. Law Mag., 174; *Rex* v. *Topham,* 4 Term R., 128.) Under our Penal Code, libel is punished on account of its tendency to injure the reputation of a person (Penal Code, Arts. 616 to 644, inclusive), and such being the case, if this intent is averred, the indictment is sufficient without the additional averment of the tendency and intent to create a breach of the peace.

Because the court erred in overruling the motions to quash the indictment and arrest the judgment, and because the indictment is insufficient, the judgment is reversed and the cause dismissed

*Reversed and dismissed.*

Opinion delivered May 14, 1884.