CASSIUS M. CLAY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. INDICTMENT — *as to stating libelous words.* It is sufficient, in an indictment for libel, to introduce the libel by the words, "as follows." This is as certain as if the language "in the words and figures as follows" were used.

2. PRACTICE — *when the specific objection should be made.* If there is a variance between a libelous article offered in evidence from the libel set out in an indictment, objection should be made to reading the article on that ground, and, if overruled, an exception taken. If this is not done, the objection can not be raised in this court.

3. LIBEL — *what sufficient to connect party with.* Where a party voluntarily made a statement of facts to a reporter of a newspaper, who, after writing part of an article embodying the facts thus given him, communicated them to the editor of the paper, who thereupon wrote and published the article, which proved to be libelous, and the article when set up in type was read to defendant from proof-sheets, and he then said it was a little rough, but it was true, and let it go, and it was so published, it was *held*, that he could not escape conviction on indictment because he did not write and publish the article himself.

WRIT OF ERROR to the Circuit Court of Livingston County; the Hon. N. J. PILLSBURY, Judge, presiding.

This was an indictment against Cassius M. Clay for a libel. The indictment, omitting formal parts, was as follows:

"That Cassius M. Clay   *   *   *   unlawfully and maliciously contriving and intending to villify and defame one Amanda Masters and Etta Masters, and to bring them into public scandal and disgrace, and to injure and aggrieve them, the said Amanda Masters and Etta Masters, unlawfully, maliciously, and willfully did compose and publish, and cause and procure to be composed and published, a certain false, scandalous, and malicious and defamatory libel of and concerning them, the said Amanda Masters and Etta Masters, and caused and procured the said false and scandalous, malicious, and defamatory libel to be printed in a certain newspaper, called the ' *Streator Pioneer*,' in the town of Streator, in La Salle county, State aforesaid, with intent to circulate and publish, and afterwards did circulate and publish, the said false, malicious, and defamatory libel of and concerning the said Amanda Masters and Etta Masters, so printed as aforesaid in said county of Livingston, which false, scandalous, malicious, and defamatory libel of and concerning the said Amanda Masters and Etta Masters, so printed, circulated, and published in said county of Livingston, is as follows: ' Brutality. Two young women maltreat their mother. A matter which for brutality is nearly equal to anything which has taken place in this vicinity for some time occurred about seven miles southeast of this village (meaning the village of Streator) recently. The actors in this drama of real life are named Masters (meaning the said Amanda Masters and Etta Masters) and we presume are known to some of our citizens. The father (meaning the father of the said Amanda Masters and Etta Masters) was called away from home on business, leaving with his wife (meaning the mother of the said Amanda Masters and Etta Masters) one hundred dollars to procure the neces-

saries of life during his absence. They (meaning the
father and the mother of the said Amanda Masters and Etta
Masters) have two daughters, Amanda and Etta Masters
(meaning the said Amanda Masters and Etta Masters), aged
eighteen and twenty, who now saw an opportunity to brace
up and put on a little style, and in order to further their
(meaning the said Amanda Masters and Etta Masters)
scheme demanded the money of their mother (meaning the
mother of said Amanda Masters and Etta Masters). The
old lady (meaning the mother of said Amanda Masters and
Etta Masters) refused to give it (meaning the money) up,
and the two daughters (meaning the said Amanda and Etta
Masters) attacked (meaning the said Amanda Masters and
Etta Masters assaulted their mother with intent to rob her)
their aged mother (meaning the mother of the said Amanda
Masters and Etta Masters), beating her (meaning the said
Amanda Masters and Etta Masters assaulted their mother
with intent to rob her), and at last knocked her down behind
the stove (meaning thereby the said Amanda Masters and
Etta Masters knocked down their mother with intent to rob
her), where she lay insensible for some time.

" 'At last Mrs. Masters came to herself, when the recol-
lection of the brutal treatment she had received at the hands
of those who, above all others, should have loved and cher-
ished her and done their utmost to render her last days
pleasant and joyous, smoothing out the wrinkles of care
and sorrow, nearly drove her wild (meaning thereby that
the brutal treatment of the said Amanda Masters and Etta
Masters nearly drove their mother crazy), and she (meaning
the mother of the said Amanda Masters and Etta Masters)
proceeded to the barn to hang herself. The daughters
(meaning the said Amanda Masters and Etta Masters) were
entirely indifferent (meaning to charge the said Amanda
Masters and Etta Masters with being indifferent and not
caring if their said mother committed the act of suicide).
But an adopted boy, who is living with the family, ran and
informed the son of Mrs. Masters, who arrived just in time

to prevent his mother from carrying her intentions into execution (meaning that a brother of the said Amanda Masters and Etta Masters prevented their mother from committing suicide). After the brother had departed, the daughters (meaning the said Amanda Masters and Etta Masters) made another attempt to assault their (meaning the said Amanda and Etta Masters) mother, but were prevented by an older married sister (meaning a sister of the said Amanda and Etta Masters) who informed them (meaning the said Amanda Masters and Etta Masters) that she would protect her mother, and thus the matter rests. If any of our Streator old bachelors want a wife who will make it lively for them, let them make a trip out to Masters' (meaning the home of the said Amanda Masters and Etta Masters) and secure one of these amiable creatures (meaning either of the said Amanda Masters or Etta Masters), and in about a year he will fetch up in the insane asylum with less hair on his head than is worn by the editor of the *Pioneer*.' Contrary," etc.

Mr. H. N. RYON, for the plaintiff in error.

Mr. J. K. EDSALL, Attorney General, for the People.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error was indicted and convicted of libel in the La Salle circuit court. He was fined $300 and costs, and it was ordered that he stand committed until the same should be paid. He brings the record to this court, and asks a reversal on several grounds.

It is first urged that the libel is not set out with sufficient certainty, and the indictment should for that reason have been quashed on the motion interposed for that purpose. The libel is introduced into the indictment by the words "as follows." This is sufficiently certain — as much so as had the language "in the words and figures as follows" been employed. We regard the indictment, under our stat-

ute, which only requires it to be so plainly stated that the offense charged may be easily understood by the jury, as good in substance and form.    This indictment answers all of these requirements of the statute, and the court did not err in overruling the motion to quash.

It is claimed that the libel read in evidence was variant from that set out in the indictment.    We have turned to the transcript, and fail to find that any objection was made to the introduction of the article in evidence because of a variance, or for any other reason.    And even if there are variances, the objection should have been made when it was offered, and on being overruled an exception should have been preserved.    But, failing to do so, it can not be raised for the first time in this court.

It is also insisted that plaintiff in error did not write or publish the article, and is therefore wrongfully convicted. It is a familiar maxim that what a person does by another he does by himself.    And we think it applies in its full force in this case.    He voluntarily gave the main statements in the article to one of the persons connected with the publication of the paper, who, after writing part of an article embodying the facts thus given him, communicated them to the editor of the paper, who thereupon wrote and published the article read in evidence.    After it was in type the article was read to plaintiff in error from the proof-sheet. He suggested a correction as to the course the family referred to resided from Streator, said it was a little rough, but it was true, and let it go.    That he in substance so said to Gale and Babcock we think so abundantly proved as to require the jury to so find.

He knew it was in type, for the purpose of being published in the paper.    He must have known it was read to him to get his indorsement of the truth of the statements it contained.    He made no protest or objection to its publication, but, on the contrary, he said "let it go," and it was published as he thus directed.    We may reasonably infer that had he previously, or even at that time, directed

the editor not to publish the article, as it might not be true, and, if not, that it would inflict a grievous wrong on innocent people, it would never have appeared. On the contrary, he volunteered the statements on which the article is based ; hears it read after it is written and in type ; hearing it read, he says "let it go," and it was published as thus directed.

Although the editor may be equally liable, that does not exonerate plaintiff in error. He took an active part in its production and publication, and is essentially one of its authors and publishers, and as such must be responsible for the injury he has inflicted on society by his reckless, if not wanton and malicious, conduct in this matter. It would have required but little effort to have learned whether the rumor, as he calls it, was true ; but he does not pretend to have made any effort. He himself admitted that it was rough, but that did not restrain his action. We have no doubt of the sufficiency of the evidence to sustain the verdict, and, perceiving no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*