THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD C. FULLER, Plaintiff in Error.

*Opinion filed February 19, 1909.*

1. LIBEL—*what is a libel under the statute.* Under the statute any malicious defamation tending to impeach the honesty, integrity, virtue or reputation of another, and thereby expose him to public hatred, contempt or ridicule or financial injury, is a libel.

2. SAME—*alleged libelous article must be taken in its ordinary meaning.* The words of an alleged libelous article must be taken in the sense which persons of common and reasonable understanding would ascribe to them, and all the words used in such article must be considered.

3. SAME—*false charge that a public officer has "filched" money is a libel.* A false charge that a county treasurer has "filched" a sum of money from the county treasury, or that he has intentionally taken money from the county for his own use to which he was not entitled, is a libel.

4. SAME—*when publication of article is not privileged.* The public conduct of all public officers is a matter of public concern and may be made the subject of fair and reasonable criticism, but this privilege does not extend to false and defamatory statements imputing criminal offense or moral delinquency to the officer, even though they are made in good faith concerning an act of the officer in the discharge of his duties.

5. SAME—*when indictment need not allege tendencies of article.* An indictment for criminal libel need not allege that the published article had any of the tendencies required by the statutory definition of libel, where the article set out in the indictment itself shows its tendency to impeach the honesty and integrity of the subject of the article and to expose him to public hatred and contempt.

6. SAME—*when editor of a newspaper is criminally responsible for libel.* The editor and proprietor of a public newspaper must use reasonable caution to see that no libels are published, and he is criminally liable unless the unlawful publication was made under such circumstances as to negative any suggestion of privity or connivance on his part or want of ordinary care to prevent it, and it is not enough to show that he had never seen the libel or was not aware of it until it was pointed out to him.

7. SAME—*what will sustain a charge of malicious publication.* Proof of the publication of a libel through the criminal negligence of the editor and manager of a public newspaper to exercise proper

care and supervision over his subordinates or criminal indifference to the character of articles appearing in the paper will sustain a charge of unlawful, malicious and willful publication.

8. SAME—*truth may be shown in defense of criminal libel, but it is an affirmative defense.* Under the constitution the truth, when published with good motives and for justifiable ends, is a defense to a prosecution for criminal libel; but such defense is an affirmative one and must be proved by the defendant.

9. SAME—*a justification must meet the precise charge made.* A justification in a prosecution for criminal libel must meet the precise charge made and proof of a similar charge is not sufficient; and where the libelous article specifies the items on which it is based the evidence is confined to such charge.

10. COUNTIES—*county treasurer may pay expense of publishing assessment lists without previous allowance.* The Revenue act of 1898 requires that the assessment of real estate shall be published in full by the county treasurer every four years and the personal assessment every year and that the expense thereof shall be paid out of the county treasury, and the county treasurer has a right to pay the expense of such publication from the county treasury although no allowance therefor has previously been made by the county board.

11. SAME—*county may approve items for extra clerk hire and expenses although no allowance was made in advance.* While a county treasurer cannot render the county liable for extra clerk hire and miscellaneous expenses where no allowance therefor has been made in advance, yet the matter of allowing such items rests in the discretion of the county board, and if they are audited and allowed by the board in the treasurer's annual report and are within the amount of the fees earned and collected, the money can not be said to have been illegally taken by the treasurer. (*Coles County* v. *Messer*, 195 Ill. 540, explained.)

12. INSTRUCTIONS—*abstract instructions are objectionable only when misleading.* It is not error to give an instruction stating an abstract rule of law where the proposition therein contained is correct and applicable to the case and is not misleading.

CARTWRIGHT, C. J., and SCOTT and FARMER, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Lee county; the Hon. O. E. HEARD, Judge, presiding.

Plaintiff in error was indicted for criminal libel in the circuit court of Lee county and upon trial was convicted and sentenced to pay a fine of $200 and costs. This conviction was affirmed by the Appellate Court and a writ of error was thereafter sued out from this court.

The indictment consisted of two counts, the first of which charged defendant with publishing in a newspaper called the *Dixon Daily Sun* a false, malicious and defamatory libel concerning one Walter B. Merriman, with intent to villify and defame him and to expose him to public hatred and contempt. The article is set out in full in the indictment. Its heading is as follows: "Money Illegally Filched—Large Sums Found to Have Been Taken by Treasurers Merriman and Sterling." It then recites that the system of alternation in the office of county treasurer of Lee county has been an expensive one for the tax-payers; that the law provides that a county treasurer cannot succeed himself; that John W. Sterling was elected county treasurer in 1898 and was succeeded by Walter B. Merriman, and for a time Sterling was under Merriman and now is a candidate for the office; that the board of supervisors in September, 1898, fixed the salary of the county treasurer at $1200 per year and deputy hire at $800; that the statute provides that the county treasurer shall receive $500 per year as supervisor of assessments, which law went into effect July 1, 1898, and was in line with the general tendency to raise the salaries of county officers; that Sterling could not legally have drawn any money not provided for by the supervisors or by the provisions of this law. The article then continued with a long account of the actions of Sterling while he was county treasurer, whereby he is alleged to have drawn certain sums for clerk hire and miscellaneous expenses. The article then had a headline entitled "W. B. Merriman More Greedy," and under it alleged that by the will of the voters and tax-payers Merriman succeeded Sterling as county

treasurer in December, 1902, and took the office with the same legal provisions and salary under which Sterling held it; that the board of supervisors, at its December meeting of that year, fixed his salary and deputy hire at the same figure as for Sterling, and that in three years thus far reported Merriman had illegally drawn, over and above all the money he was legally entitled to, the sum of $802.30. After giving an itemized statement of the sums which he had drawn in 1903, 1904 and 1905, respectively, it continued as follows: "According to the records Mr. Merriman has illegally drawn the following amounts: Dec. 1903, misc. exp., $57.97; Dec. 1903, pub. acct. and ext. clerk hire, $656.43; Dec. 1904, misc. exp., $48.68; Dec. 1905, misc. exp., $39.22; total, $802.30." The article then stated that the *Sun* had theretofore charged that Merriman and Sterling had overpaid the tax collectors of Dixon township to the amount of $1116.08, and that at the time that charge was made these officials and the machine newspapers of the county had contended that this was not true, and a general effort had been made along the line to befog the public mind in regard to the matter and many misstatements were published and given circulation; that these tax collectors had been made to pay the money back into the treasury, and that Merriman and Sterling were the only public officials who could know how much the collectors were drawing for their services and the censure for this laxity of official duty rested upon them, and the question was asked why it was not just and right that Sterling and Merriman should also return the funds drawn by them in excess of their legal compensation? The article further stated that if these gentlemen were not satisfied with their legal compensation they should not have sought the office and Sterling should not seek it again.

The second count of the indictment charged as a libel only the heading of the article as above set forth.

WILLIAM BARGE, BROOKS & BROOKS, and E. E. WIN-GERT, for plaintiff in error:

The facts alleged in the indictment, or in either count, do not constitute a criminal libel. *Goodale v. Castle,* 1 Croke's Eliz. 554; Townsend on Slander and Libel, (2d ed.) 170, 174, 175, 180, 181, 182, 196; Odgers on Libel and Slander, (Bigelow's ed.) 61, 63; Newell on Slander, (2d ed.) 1086, 292; *Miller v. Johnson,* 79 Ill. 58; *Ayers v. Grider,* 15 id. 37; *Young v. Gilbert,* 93 id. 595; *Fiber v. Dautermann,* 28 Wis. 134; *McKee v. Ingalls,* 4 Scam. 30; *Brite v. Dill,* 18 Ky. 65; *Brown v. Myers,* 40 Ohio St. 99; 2 Starkie on Slander, 85; *Cooke v. Hughes,* 1 R. & M. 112; *Carter v. Andrews,* 16 Pick. 1; *Cook v. Tribune Ass.* 5 Bl. C. C. 352; *Cooper v. Greely,* 1 Denio, 358; *Spencer v. Southwick,* 11 Johns. 592; *Fidler v. Delavan,* 20 Wend. 57; *Morehead v. Jones,* 2 B. Mon. 210; 1 Bishop on Crim. Law, (3d ed.) secs. 383, 386; *Commonwealth v. Kneeland,* 2 Pick. 206; *Bartholemew v. Bentley,* 15 Ohio, 660; *Regina v. Thompson,* 4 Eng. L. & Eq. 287; *Blickenstaff v. Perrin,* 27 Ind. 527; *Lukehart v. Byerly,* 15 Pa. St. 418; *Edsall v. Russell,* 4 M. & G. 1090; *Gosling v. Morgan,* 32 Pa. St. 273; *Griffith v. Lewis,* 8 Q. B. 841; *People v. Seeley,* 139 Cal. 118; *State v. Nichols,* 15 Wash. 1; *Mc-Caleb v. Smith,* 22 Iowa, 242; 25 Cyc. 547, 575; 13 Am. & Eng. Ency. of Law, 354; *Hemming v. Power,* 10 M. & W. 569; *Cruger v. Railroad Co.* 12 N. Y. 190.

The publication in question is a privileged one. Const. 1870, art. 2, sec. 4; *Gott v. Pulsifer,* 122 Mass. 235; Newell on Slander and Libel, 575-577; *Kelly v. Sherlock,* L. R. 1 Q. B. 689; *Pursell v. Sowler,* 2 C. P. Div. 218.

The following authorities show that the drawing of this money by these county treasurers was an illegal drawing: Const. 1870, art. 10, sec. 10; *Coles County v. Messer,* 195 Ill. 542; *Foote v. Lake County,* 206 id. 185; *Parker v. County of Richland,* 214 id. 165; *Whittemore v. People,* 227 id. 453.

The indictment was defective in not alleging the words had the libelous tendency required by the statute. *Byrd* v. *State,* 44 S. W. Rep. 521; *Lawton* v. *Territory,* 9 Okla. 456; *Moods* v. *State,* 94 Ala. 42; Townsend on Slander and Libel, 181.

W. H. STEAD, Attorney General, and C. H. WOOSTER, State's Attorney, (A. C. BARDWELL, of counsel,) for the People:

The publisher, proprietor or managing editor of a newspaper is civilly liable for the publication of libelous matter though inserted without his knowledge or consent. *Storey* v. *Wallace,* 60 Ill. 51; *Smith* v. *Utley,* 92 Wis. 133; *State* v. *Mason,* 36 L. R. A. 779; *Williams* v. *Fuller,* 94 N. W. Rep. 118; *Crane* v. *Bennett,* 77 App. Div. (N. Y.) 102; *Dunn* v. *Hearst,* 139 Cal. 239; *Graybill* v. *DeYoung,* 140 id. 323.

Under the same conditions the defendant is criminally liable in absence of statutory regulation to the contrary. *State* v. *Mason,* 36 L. R. A. 779; *Commonwealth* v. *Morgan,* 107 Mass. 199; Wharton on Crim. Law, 1627, 1649; 1 Bishop on Crim. Law, 219-221; *Commonwealth* v. *Damon,* 136 Mass. 441.

There is no real distinction between civil and criminal libel, the only distinction, if any, being that a writing may be insufficient to sustain a civil action and yet sufficient to sustain a criminal prosecution. 18 Am. & Eng. Ency. of Law, 865, and cases cited.

The title or heading of an article is a part thereof and must be considered in determining whether or not the publication was libelous, and it has been frequently held in actions based on publications in newspapers that the sting of the libel was contained in the headlines. 18 Am. & Eng. Ency. of Law, 985; *Hayes* v. *Press Co.* 127 Pa. St. 642.

The words of a libelous publication are to be taken in their natural and obvious meaning, the test being, what

would men of ordinary understanding infer from such words. *Harkins* v. *Daily News Co.* 102 Ill. App. 162; *Nelson* v. *Borchenius,* 52 Ill. 236; *Barnes* v. *Harmon,* 71 id. 609; *Ransom* v. *McCurley,* 140 id. 626; *Prussing* v. *Jackson,* 85 Ill. App. 332.

The publication of a charge against a public officer imputing to him dishonesty and corruption in the discharge of his official duty is libelous. 2 McClain on Crim. Law, sec. 1047; *Commonwealth* v. *Damon,* 136 Mass. 445; *State* v. *Moat,* 45 N. J. 494.

The manager or editor of a newspaper is liable for a libel published in it, because his supervision of the matter which appears in the paper is of such a nature that without his consent or neglect of his ordinary duties a libel cannot appear therein. 18 Am. & Eng. Ency. of Law, 1065; *Bruce* v. *Reed,* 49 Am. Rep. 586; *Smith* v. *Utley,* 92 Wis. 133; Newell on Slander, 239; *State* v. *Mason,* 26 L. R. A. 779.

Malice arises as well from reckless publications as from publications inspired by personal ill-will. *Crane* v. *Bennett,* 77 App. Div. (N. Y.) 102; *Clark* v. *North American Co.* 203 Pa. 346; *Turner* v. *Hearst,* 137 Cal. 232.

In an action for slander the law does not require malice in fact to be proven, as malice is implied from the speaking of slanderous words. *Mitchell* v. *Milholland,* 106 Ill. 175.

In prosecutions for criminal libel it is not necessary to prove express malice where the alleged libelous article is libelous *per se.* *State* v. *Brady,* 9 L. R. A. 606; 3 Greenleaf on Evidence, sec. 168.

Malicious intent giving a right to punitive damages is presumed from the publication of a letter which is libelous *per se.* *Iron Works* v. *Machine Co.* 8 L. R. A. 1023.

The truth affords justification in a criminal case as in a civil case only when published with good motives and for justifiable ends. Const. art. 2.

If an alleged libel or slander imputes the commission of a crime and the plea of justification is interposed, the de-

fendant must fasten upon the plaintiff all the elements of the crime, both of act and intent. 18 Am. & Eng. Ency. of Law, 1070; *Hicks* v. *Rising*, 24 Ill. 566; *Stowell* v. *Beagle*, 79 id. 525.

To constitute a justification the precise charge must be justified, and it will not be sufficient to offer proof of another charge, though of the same general nature and though distinct only as to the subject matter or the time and place. 18 Am. & Eng. Ency. of Law, 1069.

Where a libel imputes a crime, good faith or honesty of motive is not a defense. Malice is presumed. *Gilmer* v. *Eubank*, 13 Ill. 271; 13 Ency. of Pl. & Pr. 75.

A belief in the truth of the charge is not a defense. 18 Am. & Eng. Ency. of Law, 1074; *State* v. *Hoskins*, 47 L. R. A. 223.

An intention to serve the public does not authorize a defamation of private character. *Rearick* v. *Wilcox*, 81 Ill. 77.

The publication is not privileged but is made at the risk of the publisher, who, to escape liability for libel, must prove the truth of the charge made and that it was published with good motives and for justifiable ends. *Star Publishing Co.* v. *Donahue*, 65 L. R. A. 980; *Smith* v. *Burrus*, 13 id. 59; *Rearick* v. *Wilcox*, 81 Ill. 77.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error first contends that the article as set out in the first count is not libelous in its nature as it does not charge Merriman with a crime but only with having drawn money from the treasury without previous authorization from the board of supervisors, and that the word "filch" does not necessarily import a crime. Under the statute any malicious defamation tending to impeach the honesty, integrity, virtue or reputation of another, and thereby to expose him to public hatred, contempt, ridicule or financial injury, is a libel. It is not necessary that it should amount

to a charge of crime. The charge is that Merriman filched large sums by illegally taking, in three years, $802.30 to which he was not entitled. The established rule in this State is that the words in an action of libel must be taken in the sense which the readers of common and reasonable understanding would ascribe to them,—that is, in their ordinary or common acceptation. (*Nelson* v. *Borchenius,* 52 Ill. 236; *Barnes* v. *Hamon,* 71 id. 609; *Ransom* v. *McCurley,* 140 id. 626.) All the words in the article are to be considered, and when they are all considered together the question is, how would they be understood by men of common and reasonable understanding? The primary and ordinary meaning of the word "filch" is to steal, and carries with it also the idea of secrecy. The definitions "to steal privily," "to pilfer," "to steal, especially in a small, sly way," convey these ideas. The definitions "to take wrongfully from another," "to take from another in an underhand way, as by violation of trust or good faith," are no better for the plaintiff in error. The synonymns usually given for "filch" are "steal," "thieve," "rob," "purloin," "pilfer." The charge against a public officer that by a breach of trust or wrongfully he has taken from the public treasury money to which he was not entitled certainly tends to impeach his honesty and integrity and to expose him to public hatred and contempt, whether it amounts to a charge of statutory crime or not. By no refinement of reasoning or construction can it be held that the article charges less, even without the headlines, than that Merriman intentionally took for his own use from the county $802.30 to which he knew he was not entitled. Such a false charge is a libel.

The further contention is made that the indictment should have been quashed because it did not aver that the article had any of the tendencies required by the statutory definition of libel. We think the averments of the indictment are sufficient under the statute. (*Clay* v. *People,* 86 Ill. 147; *Crowe* v. *People,* 92 id. 231; *People* v. *Seeley,*

139 Cal. 118.) The article itself plainly tended to impeach the honesty and integrity of Merriman and to expose him to public hatred and contempt, and it was not necessary to allege that it had such a tendency.

The claim is next made that the publication of the article was privileged, as the criticism was directed against public officials. Public conduct of all public officers is a matter of public concern and may be made the subject of fair and reasonable criticism, but the privilege does not extend to false and defamatory statements imputing criminal offense or moral delinquency to the officer in the discharge of his official duties. *Rearick* v. *Wilcox*, 81 Ill. 77.

Section 179 of our Criminal Code provides: "In all prosecutions for libel, the truth, when published with good motives, and for justifiable ends, shall be a sufficient defense." It is insisted that the record established such a defense. We find nothing to support the allegation that Merriman filched or stole any money. This part of the charge was, therefore, untrue. The specific charge made against him in the article was, that in three years of his term as county treasurer he had illegally drawn, over and above the money he was legally entitled to, the sum of $802.30, as itemized above. Prior to his election Merriman's compensation was fixed at $1200 and his clerk hire at $800 a year. No amount was fixed for stationery, fuel or other expenses of his office. Of the sum charged to have been illegally taken by Merriman, the proof shows $656.43 was paid out in December, 1903, in connection with the preparation and publication of the assessment roll. Section 29 of the act of 1898, for the assessment of property, (Laws of 1897, Extra Sess. p. 45,) provided that the assessment of real estate should be published in full by the county treasurer every four years and the personal assessment every year, and that the expense thereof should be paid out of the county treasury. The evidence shows that $594.43 of the $656.43 was paid by Merriman to the vari-

ous newspapers of the county for the publication of the assessment roll, as provided in the statute. The county board had made no provision for the payment of this bill and it was not included in the $800 clerk hire as fixed by the board of supervisors. Under the provisions of the statute it was a legitimate expense, which the county treasurer had a right to pay. The balance of the $656.43, being $62, was paid for extra clerk hire made necessary in preparing the assessment roll. The record shows that before Merriman was elected as county treasurer the county board adopted the following recommendation of its fees and salaries committee: "That the county treasurer be allowed to employ extra clerk hire, if necessary on account of the work imposed on the office of said treasurer by his being *ex-officio* supervisor of assessments." This order had not been rescinded at the time of the trial in the court below. The proof was uncontradicted that with the regular force in Merriman's office it was impossible to get out the assessment list for publication within the time required by law. The rest of the items entering into the $802.30 alleged to have been illegally drawn by Merriman were small expenditures of $57.97 in 1903, $48.68 in 1904 and $39.22 in 1905, which the board, on the report of Merriman that they had been so expended in the work of the office, approved and allowed, in accordance with section 51 of chapter 53, (Hurd's Stat. 1908, p. 1094,) which reads: "Said county boards * * * shall carefully audit and examine every such report, and ascertain the exact balance of such fees, if any, held by any such officer, after such expenses as the said board may approve and allow, and such salary * * * shall have been deducted from the gross amount shown by such reports to have been * * * collected by such officer."

The provision of section 10 of article 10 of the constitution is that the county board shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel and other expenses. The construction

of this section has been before this court frequently.    In
*Purcell* v. *Parks,* 82 Ill. 346, the county board failed to fix
the compensation of the county clerk elected in 1873 until
March, 1874, and it was held that he was not entitled to
appropriate to his use the fees of the office except by virtue
of an order of the county board, and that in the absence of
such order he was not entitled to any compensation; that
fixing it after his election did not increase or diminish the
compensation in the sense that term is used in the consti-
tution.

In *Wheelock* v. *People,* 84 Ill. 551, it was held that
where the compensation of a sheriff had not been previously
fixed by the county board, the first meeting of the board
after his election was a proper time to fix it, and that the
compensation as fixed by the board need not necessarily in-
clude all the expenses of the office; that it might or might
not include such expenses; that one sum might be fixed for
compensation and another sum designated for necessary
clerk hire, stationery, fuel and other expenses.

In *Briscoe* v. *Clark County,* 95 Ill. 309, the county board
had in 1873 fixed the compensation of the county clerk at
$1200, his clerk hire at $600 and stationery and fuel at $200
per annum.    During his term the board had agreed with
him to change what he was to receive, in certain particu-
lars.    Two years later they repudiated this arrangement as
invalid.    In discussing the power of the county board in
these matters this court said (p. 311).: "By the constitu-
tion the county board is to fix the compensation which each
county officer is to receive, *with* (in addition to or besides)
'the amount of their *necessary* * * * expenses.'    The
compensation or salary was to be fixed in advance.    The ex-
penses were to be determined by the necessity which the
business of the office should develop."    And then, in dis-
cussing the effect of the illegal order, stated (p. 312): "It
was effective in doing away with the work of the county
board in 1873, in so far as that action undertook the extra-

constitutional work of fixing in advance the amount to be allowed for necessary expenses. It follows that the accounts of this officer with the county should be adjusted by charging him with all the fees actually collected and crediting him with his salary, ($1200 a year,) and also with all moneys actually paid out by him as expenses for necessary fuel, stationery and clerk hire."

In *People* v. *Foster,* 133 Ill. 496, this court had under consideration the liability of a sheriff and the sureties on his official bond, and stated (p. 505) : "The sheriff is by law * * * empowered to appoint an assistant jailer, and * * * when the sheriff appoints a jailer no right of action accrues to the person thus appointed, against the county, for his services, yet where the county voluntarily pays such assistant no recovery can be had from the sheriff therefor by the county. * * * The law has wisely vested in the county board a large discretion to make such provision as the exigency of keeping the prisoners may require, and if, in the exercise of reasonable discretion, for any cause satisfactory to the county board, additional guards or assistants should be found necessary, we know of no provision of law or principle of public policy that would prevent their making a reasonable allowance therefor from the county fund." And again (p. 509) : "This court is committed to the construction of the statute that the amount fixed by the county board 'for necessary clerk hire, stationery, fuel, lights,' etc., to a county officer, remains under the control of the board and may be changed at any time when, in their judgment, the necessity therefor exists."

In *County of LaSalle* v. *Milligan,* 143 Ill. 321, this court again had under consideration the compensation of a sheriff. It appeared that the jail was not considered safe, and the sheriff testified : "I was ordered by the court and the board, at the time the prisoners dug out of jail, to employ two guards and keep them there day and night. The board visited the jail at the time those prisoners had broken out

and told me to keep a guard. It was a verbal order, only, and after the jail seemed to be insecure." This court held that while the supervisors could not bind the county by such verbal order, the evidence having established the fact that the sheriff acted in good faith in employing the guard and the board having notice of the insecurity of the jail and that the guard was necessary, the bills for such expense being afterward presented and allowed by the board with the fullest and most ample knowledge on their part, not only as to what they were for but also as to their necessity, the board thereby ratified the act of the sheriff in the performance of a duty resting upon the county. In discussing the law on this question the court said (p. 337) : "If the necessity existed therefor, no one would question the power of the board to include the expense of employing guards for the jail in the original order fixing the salary and amount to be allowed as expenses of the office. It can, however, make no difference that it was not then included, for the reason, as we have seen, the expenses of the office remain within the control of the board." Appellant in that case offered, and the court refused, the following proposition of law : "The law is that the county is not liable to pay the plaintiff, in addition to his salary as sheriff fixed by the .county board, any compensation whatever for and on account of jailer." The jailer was really a guard or deputy in charge of the jail, and the county board, with full knowledge of all the facts, allowed the sheriff the money expended in keeping this deputy, and we said (p. 339) : "As before said in respect of another matter, if the allowance · for such deputy to act as jailer had been included in the original order fixing salary and the expenses of the office which the county would pay out of the fees earned, as it could only be paid, no one would question the authority of the board in respect thereof, and it was so expressly held in *People* v. *Foster, supra.* We think it clear that, so far as the cost of keeping a deputy in charge had, as an expense

of the office, been audited by the board and paid out of the earnings of the office, the plaintiff was entitled to retain it in this suit. (*People* v. *Foster, supra.*) · * * *  If appellant desired to question the right of appellee to recover for the expenses incurred by him for a jailer, which the county had not paid, a proposition should have been submitted raising that question, which the court would probably have held, but if not, error could have been assigned thereon. (*Seibert* v. *Logan County,* 63 Ill. 155; *Goff* v. *Douglas County,* 132 id. 323.)  In the cases cited it was held that the county was not liable, in the first to the deputy and in the second to the sheriff, for the salary or per diem of the jailer appointed by the sheriff. There was in those cases no action of the county board allowing the same as part of the expenses of the sheriff's office, and it was, as we still think, properly held that the county was not liable. The liability arising because of the action of the county board in allowing the expenses of the office, it is manifest, we think, that the court could not have properly held the proposition as relating to the amounts paid by the county."

In *Brissenden* v. *County of Clay,* 161 Ill. 216, it was held that the county board having fixed in advance the compensation and clerk hire of the county clerk in one amount, it could not afterwards, during his term of office, change either the salary or the clerk hire or other expenses of the office, and it was stated that while, under the constitution, the amount of the compensation and other expenses might be fixed in one amount, it was better practice that the compensation should be fixed in one amount and the clerk hire and other expenses in a separate and distinct amount.

In *Daggett* v. *Ford County,* 99 Ill. 334, the circuit clerk presented to the county board certain expenses which had not been included in the amount previously fixed by the board, and the amount claimed was disallowed and suit was then brought to recover from the county. The court held that the amount not having been allowed by the board there

was no legal liability, and stated (p. 342): "Although it is the amount of their *necessary* clerk hire, etc., which the county board is to fix, it is for the board to decide what amount is necessary. It is the amount necessary which they are to fix, and it is their duty to allow all that is necessary. Still, they are to fix the amount which is necessary, and of necessity are to determine what is necessary. And when they have acted and fixed what in their judgment is the necessary amount for clerk hire, etc., we do not see that under the constitution there is any other power which has authority to increase it. The power of fixing the amount of necessary clerk hire, etc., is devolved by the constitution on the county board as a fair and impartial tribunal, and it is to be supposed that they will perform the duty in good faith, as it rests upon them, under the constitution. Should it be found at any time that the board had committed an error in judgment and not allowed an amount sufficient for necessary clerk hire, etc., the construction which we have heretofore adopted, that the amount once fixed for necessary clerk hire, etc., when it is fixed separate from the allowance for personal services, is subject to be changed from time to time during the term of office, as the board may see fit, will enable the board to afford any suitable relief in this regard, and it may be expected that this will be sufficient for the avoidance of any serious injustice being done to officers in any under-estimating by the county board of the necessary expenses of their offices." This court in the recent case of *Whittemore* v. *People,* 227 Ill. 453, quoted and approved the doctrine laid down in the above quotation from *Daggett* v. *Ford County, supra.*

In *Coles County* v. *Messer,* 195 Ill. 540, the county board had by resolution fixed the compensation of the sheriff, "including all necessary deputy hire," at the sum of $2500 per annum, "and that the said sheriff be allowed $1.50 per day for jailer." The sheriff claimed he had paid out more in necessary expenses than this amount and asked

the county for extra compensation from the fees of his office. The county board refused to allow and pay such amount and he brought suit to recover. This court reviewed at length, among others, the authorities heretofore discussed in this opinion, and stated (p. 545): "If the compensation, including the expenses, is fixed at one sum, the officer is entitled to retain that amount if it is paid by the fees of his office. If it is fixed in separate sums,—one sum for the compensation of the officer and another sum for expenses,—the officer can only retain out of the fees collected a sufficient sum to reimburse him for moneys actually paid out for reasonable and necessary expenses of his office. * * * If the amounts are fixed separately, the compensation, aside from the expenses, cannot be changed during the official term, but the expenses may be changed from time to time by the county board as the necessities of the office may change. * * * The principle of all the decisions is, that the compensation, including the expenses of the office, is to be paid, if at all, out of the fees and emoluments of the office, and that there is no liability and there can be no recovery for expenses which have not been fixed in advance by the county board. The plain intent and meaning of the constitution is that the county board shall have power to control and limit the expenses of county officers, and that the officers shall not be at liberty to create a liability against the county except within some limit already fixed by the county board. The allowance for expenses may be changed from time to time, as varying circumstances may require; but there is no liability unless an allowance has been made."

The summing up given in *Coles County* v. *Messer* we think is in conformity with the rules laid down in all the decisions of this State, but the precise question that is here being considered was not in that case and was not passed upon. Neither was it in most of the cases that we have heretofore referred to. The precise question, however, in principle, was passed on by this court in *Briscoe* v. *Clark*

*County, supra, People* v. *Foster, supra,* and *County of La-Salle* v. *Milligan, supra,* and it was held in those cases that the county board had a right to allow the sums paid for the expenses of the office even though no amount had been previously fixed. These cases have been quoted by us in many decisions with approval, and nothing has been said in conflict with their holding on this point. As was said by the Appellate Court in its decision in this case, the office expenses, such as fuel, lights, pens, pen-holders, ink, paper, and the various instruments and blanks necessary or proper for the conduct of the public business, cannot always be foreseen and properly estimated in advance by the county board. While a county officer cannot render a county liable for necessary clerk hire and other expenses without a previous order from the county board, we see no reason why such necessary clerk hire or expense, if incurred by him without such previous authority, cannot be thereafter allowed by proper action of the board. There would appear to be no likelihood that the board would allow in this manner unwise or unnecessary expenses which they would not have allowed if asked for in advance. Moneys allowed in this cause for extra clerk hire and miscellaneous expenses were within the discretion of the county board. They were within the amount of fees earned and collected by the office, and the board deemed them necessary, as they audited and allowed them in the annual report of Merriman, in accordance with the statute. They cannot, therefore, be said to have been illegally taken by Merriman.

Not only was the charge of taking money illegally or filching it not sustained, but to be a sufficient defense the truth must be published with good motives. There was evidence in the record tending strongly to prove that statements were made by plaintiff in error, both before and after the publication, (though he himself denied making them,) which would show that his motives in making the publication against Merriman were malicious. Moreover, the pub-

lication stated that these illegal expenditures would appear from the records of the county board, but it failed to state the important fact that the county board had approved and allowed all of these expenditures. This omission tended to impeach the motives of the plaintiff in error as to the publication.

The further contention is made that plaintiff in error is not liable for the publication; that it was made by the Dixon Sun Company, of which he was only an employee; that while he wrote the article he did not write the headlines, but that they were written by another employee and he knew nothing about them until they were published. The article was first published in the *Dixon Daily Sun* of October 31, 1906. It was again published as a supplement or insert in the edition of November 3. The plaintiff in error was president of the corporation, a director and stockholder therein, editor in chief and part owner of the paper, directing its policy and exercising a general supervision. He wrote the article in question and delivered it to H. E. Ward, who was the managing editor, having charge of the mechanical department. Ward wrote the headlines, and plaintiff in error apparently did not see or know of them until he saw the same in print the evening of the publication. Afterward, however, the supplement containing the article and headlines was published in the issue of November 3, with plaintiff in error's knowledge, and he helped to mail it. Even if he was not responsible for the headlines of the article on the first publication, there can be no doubt of his full responsibility for the second publication, including the headlines.

It is further contended that it was error to refuse the admission of evidence that Merriman took $500 a year, for three years, as his salary as supervisor of assessments. The charge of illegal taking of money was not based on this claim. On the contrary, the article expressly conceded that he had a right to this salary. A justification must meet the

precise charge made. Proof of a similar charge is not suf-
ficient. The article specified the four items on which it was
based and the evidence was properly confined to the charge.
The evidence was not admissible under the second count,
because the whole article being in evidence, showed that it
did not refer to the salary as supervisor of assessments.

Many of the instructions are objected to. It is urged
that the third instruction stated an abstract proposition of
law, only. Its purpose was to inform the jury that the re-
sponsibility of publishers and editors of newspapers for the
publication of a libel was not different from that of other
persons. This proposition was applicable to the case and
was not misleading. "Instructions stating a mere abstract
principle are only objectionable when their tendency is to
mislead the jury." (*Betting* v. *Hobbett*, 142 Ill. 72; *Chi-
cago and Alton Railroad Co.* v. *City of Pontiac*, 169 id.
155.) The instruction does not assume certain facts, as
contended.

The fourth instruction is objected to as irrelevant. It
told the jury that if the county board allowed Merriman
the various items of expense mentioned in the article, such
allowance was lawful although no resolution fixing the
amount of such expense had been previously adopted. Man-
ifestly, from the conclusions heretofore reached, this in-
struction was relevant.

Objection is made that several of the instructions au-
thorize a verdict of guilty upon proof that the plaintiff in
error, by his criminal negligence only, permitted the publi-
cation of the libel. It is the duty of the editor and pub-
lisher of a newspaper to use reasonable precaution to see
that no libels are published. He is criminally liable unless
the unlawful publication was made under such circum-
stances as to negative any suggestion of privity or con-
nivance on his part or want of ordinary care to prevent it.
It is not enough to show that he has never seen the libel
or was not aware of it until it was pointed out to him.

(*Commonwealth* v. *Morgan,* 107 Mass. 199; *State* v. *Mason,* 26 Ore. 273.)   Proof of publication through the criminal negligence of the editor and manager to exercise proper care and supervision over his subordinates, or criminal indifference to the character of the articles appearing in the paper, will sustain a charge of unlawful, malicious and willful publication.

The further objection is made that the burden of proving the charge contained in the article was imposed by certain instructions upon plaintiff in error.   At common law the truth could not be shown in defense of a prosecution for libel, because such prosecution was based on the tendency of a libelous publication to cause a breach of the peace, and such tendency is not altered by its truth.   Our constitution has changed this rule, and the truth is now a defense when published with good motives and for justifiable ends. It is, however, an affirmative defense and must be proved by the defendant.   (*Commonwealth* v. *Bonner,* 9 Metc. 410.) In this case it is, however, immaterial whether or not the burden of proving the truth of the charge rested upon the defendant, or, if it did rest upon him, whether he was required to establish it by a preponderance of the evidence or only by evidence sufficient to raise a reasonable doubt of the falsity of the charge.   If proof of the publication was made beyond a reasonable doubt the jury should have found a verdict of guilty, unless the evidence of the truth of the charge appeared at least sufficient to raise a reasonable doubt.   The charge of the illegal taking of money rested entirely upon the transactions between the county board and the treasurer, and as to those transactions there was no dispute.   We have reviewed them in this opinion and held that they were legal, and that the sums of money in question were legally retained by the treasurer.   It was unnecessary for the court to instruct the jury in regard to the burden of proving the truth of the charge, because the charge was, on the undisputed facts, not true.   The giving

of the instructions on this point, even if wrong, was therefore harmless to the defendant.

The modification of the fourteenth instruction asked by plaintiff in error, by inserting the word "material" before the word "allegation," was not error. The jury were fully instructed as to what was essential to be proved. They could not have erred as to the material allegations of the indictment. In view of all the instructions, the modification could not have been injurious to the plaintiff in error. *Harvey* v. *Chicago and Alton Railway Co.* 221 Ill. 242.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

CARTWRIGHT, C. J., and SCOTT and FARMER, JJ., dissenting.