THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SIDNEY SPIELMAN *et al.*—(ARTHUR LORENZ, Plaintiff in Error.)

*Opinion filed October 28, 1925—Rehearing denied December 3, 1925.*

1. CRIMINAL LAW—*when inducement and innuendo are not necessary in charging libel.* The words of an alleged libelous article must be taken in the sense which persons of common and reasonable understanding would ascribe to them, and where the defamatory matter, when taken in such sense, is *prima facie* or in itself actionable, neither inducement nor innuendo is necessary in charging the libel.

2. SAME—*when indictment charging libel contains colloquium.* The colloquium, or averment connecting the defamatory words with the complaining party, is direct and sufficient in an indictment charging libel where the charge is that the defendant "unlawfully, maliciously and willfully did compose and publish, and cause and procure to be published, a certain false, scandalous, malicious and defamatory libel of and concerning" the complainant.

3. SAME—*libel may be committed against members of corporation.* A criminal libel need not be of a particular person but it may be of a family, class, corporation or other body, and the rule that a libel against a corporation cannot be taken advantage of by its individual members cannot be invoked against an indictment charging the publication of alleged libelous matter concerning the members of the American Legion, and not concerning the Legion itself, as a corporation.

4. SAME—*what is sufficient to constitute criminal liability for libel of class or group.* Criminal liability for libels rests upon their tendency to provoke breaches of the peace, and as a libel of a class or group has as great a tendency to provoke a breach of the peace or to disturb society as has a libel of an individual, such a libel is punishable even though its application to individual members of the class or group cannot be proved.

HEARD, J., dissenting.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

HENRY W. DRUCKER, (JOHN G. RIORDAN, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, CLARENCE E. NELSON, and FERRE C. WATKINS, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

At the November, 1922, term of the criminal court of Cook county Arthur Lorenz was jointly indicted with Sidney Spielman for criminal libel. Spielman was not apprehended. Lorenz moved to quash the indictment, but the motion was denied. He then entered a plea of not guilty. A jury trial resulted in a verdict of guilty and a sentence of six months' imprisonment in the house of correction and a fine of one dollar and costs. On a writ of error from the Appellate Court for the First District the judgment of the criminal court was affirmed. Lorenz prosecutes this writ of error for a further review.

The indictment consisted of three counts. The first count charged, in substance, that Spielman and Lorenz, contriving and intending to vilify and defame the members of the American Legion, a corporation, to bring them into public scandal and disgrace, to injure and aggrieve them, to impeach their honesty, integrity, virtue and reputation, and to publish their natural defects and thereby expose them to public hatred, contempt, ridicule and financial injury, unlawfully, maliciously and willfully composed in the German language, and on December 13, 1921, published in a certain newspaper called the *Staats Zeitung,* circulated in Cook county, a certain false, scandalous, malicious and defamatory libel of and concerning the members of the American legion. The article was then set forth, first as it appeared

in the German language and then as translated into English. The second count charged that Lorenz by the same article libeled Reed G. Landis, James C. Russell, Harry A. Newby, Fred L. Pond, Charles W. Schick, Horatio B. Hackett, Palmer Edmunds, John J. Kelly, William Purday, W. W. Sullivan and George F. Carroll, members of the American Legion. The third count charged Spielman and Lorenz with libeling seven deceased persons. Upon this count, however, a *nolle prosequi* was entered.

The translation of the article from German into English, as it appeared in the indictment, is as follows:

### *"The Finest of the Fine.*

"The American Legion, this instrument bought with British money to suppress the truth, to gag freedom of conscience, to beat down every free expression of opinion, to betray organized American labor—this American Legion demands the scalp of Police Commissioner Miller of St. Louis. Mr. Miller has in plain terms given expression to a naked truth, in that he has established the fact, that the number of crimes in America show an actually fearful increase, and that the second place, 85 per cent of all crimes must be attributed to the war veterans. Even the one who knows himself free from any malevolence against the war veterans, who in overwhelming majority did not enter the army in exuberant enthusiasm, but under bitter legal compulsion, will find nothing objectionable in Miller's statement. Indeed it cannot be disputed that the war has completely ruined the economic and social conditions in America. There is, of course, want, which is responsible for the increase of the lawlessness, but only in a small measure. Far stronger than the want is the after-effect of the seven fat years, which America enjoyed from the beginning of the blood-strained munition neutrality of Wilson. The people became accustomed to rich wages easily obtained and seek them to-day in the way and manner most pleasing to them; with the crowbar on the dwelling-door

or with revolver on the street. But the army, far from being a hotbed of patriotic virtues, was quite obviously an excellent preparatory school for the fostering of this inclination, at least among the millions, who did not learn to understand the seriousness of the war but sneaked about in the American training camps or at the halting places in France.

"The American Legion as you know, goes about peddling the claim that it embodies the cream of the nation. It tries to make people believe, that in itself the best and noblest elements of the American people are united. Patriotism and love of country, and, what is herewith combined, unselfish devotion to its American fellow-citizens, belongs to its copyhold, and its American native country owes it a special reverence, because it so spontaneously sprang to her defense. That is, of course, an audacious lie. Those who in the year 1917 (as already previously in the years of American neutrality) voluntarily took up arms, were quite other than the cream. They were simply the refuse of the nation. Those who really had adopted the trade of war as a means of making a living, were indeed the best among them, and they were almost without exception, tramps, vagabonds and bums who did not make any specially brilliant guard for the starry banner. With them stood the many, altogether too many, who already had worn the prison stripes, and for whom the army was far less an opportunity to rehabilitate their civil honor, than it was to evade the Spanish curtains.

"Somewhat of this caliber were the overwhelming majority of the American volunteers of the year 1917, who according to the tradition of the past decades, undeniably placed the American uniform only a shade higher than the garb of the prison house. People of this character, we repeat, were, almost exclusively, either those who found themselves ready or those who found themselves condemned to carry on the crusade for the Washington hostility to Ger-

many, clothed in humanitarian phrases. Hoboes and dull lads that was the company, upon which the Wilsons and Morgans, the servants of Britain and the friends of France relied. Truly a worthy tool for a worthy cause.

"When the American Legion claims as its nucleus those volunteers, it is naturally treading upon dangerous ground, for the possibility of a relapse of those elements into their earlier pursuits is imminent, and a criminal warrant might effect their undoing. The other members of the Legion were simply conscripts, who obeyed the call to arms under a hatred compulsion and in the presence of this state of affairs could not in any way show any particular patriotism. Torn from their civilian pursuits, exempted from the strife of existence, and when not in the immediate war zone, subjected to only loose discipline anyway, the less firm characters among them were in danger of a moral bewilderment. The rise in crime shows, that this danger has become an actuality. It would not, perhaps, have been so, if America had been able to give all of them bread and wages, as soon as they stepped from the army into civilian life. That was not possible because of the criminal shortsightedness, with which all questions relating to the war were handled, and the result is that the wearers of the uniform, once arrayed against the Huns and barbarians are to-day waging war against justice and law in America. And when there is not only a confusion about mine and thine, but when we much more day after day see deeds of repulsive barbarity, of horrible brutality, then do we hear resounding from the forest only what we called into it. It is always hard to banish the spirits that one has called forth. When one for years trains a whole people in the use of paving-stones, hemp-slings, bayonet-points and gun-stocks, then he must take into the bargain the fact that such and abnormally developed tendency will direct itself toward quite another object than the one for which it was originally aimed. The American Legion may scold and drivel ever so much; its

patent patriots are to-day a cross for America, which thereby has to stand the drawback of her efforts to develop our nation to the rowdy and bully over against a different member of the human race."

From the evidence offered on behalf of the prosecution it appeared that the plaintiff in error admitted that he wrote the article and that he was the editor of the *Staats Zeitung*. The article was published in that paper on December 13, 1921. Its authorship and publication were not disputed. The only evidence offered by the plaintiff in error was the testimony of a single witness who made a translation of the article, which he read in evidence, and who testified that his translation was in better English than the one contained in the indictment. The differences between the two translations were inconsequential.

The plaintiff in error contends that the trial court erred in denying his motion to quash the first and second counts of the indictment, because, he argues, (1) the article is not libelous as to members, generally, of the American Legion, as charged in the first count, nor as to individual members of the same corporation, as charged in the second count; (2) the indictment does not allege or charge, by way of inducement, any facts showing the libelous application of the article to the persons named in the first and second counts; (3) the indictment does not contain a colloquium or direct charge that the article published was of and concerning the parties therein named; (4) the indictment has no innuendo or allegation to show how and in what manner the words of the article had the defamatory meaning charged; (5) a libel against a corporation can not be taken advantage of by its individual members; and (6) an article referring generally to a class of persons can not libel one or more individuals of such class.

Section 177 of the first division of the Criminal Code (Cahill's Rev. Stat. 1925, p. 882,) provides: "A libel is a malicious defamation, expressed either by printing or by

signs or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation or publish the natural defects of one who is alive, and thereby expose him to public hatred, contempt, ridicule or financial injury." Under this statute it is not necessary to charge one with crime to make a printed communication libelous *per se.* ' (*People* v. *Fuller,* 238 Ill. 116; *People* v. *Strauch,* 247 id. 220; *Ogren* v. *Rockford Star Printing Co.* 288 id. 405; *Cerveny* v. *Chicago Daily News Co.* 139 id. 345; Pollock on Torts,—11th ed.— pp. 254, 255.) · The words of an alleged libelous article must be taken in the sense which persons of common ·and reasonable understanding would ascribe to them, and all the words used in the article must be considered. (*People* v. *Fuller, supra.*) The plaintiff in error not only charged members of the American Legion with indolence and attempts to obtain their livelihood by criminal means, but also accused them of crime, venality and lawlessness. Obviously, these charges are within the statute, and the article is libelous both as to the membership of the American Legion, generally, and the individual members of that body mentioned in the second count of the indictment.

Where the alleged defamatory words are ambiguous or equivocal and require explanation by reference to some outside or extrinsic matter to show that they are actionable, it must be expressly stated that such matter existed and that the defamation related thereto. The allegation thus required is called the inducement or statement of extrinsic matter. The colloquium is an averment which connects the defamatory words with the complaining party and with the extrinsic matters, if any, set forth by way of inducement. The office of the innuendo is to aver the meaning of the language published. (*McLaughlin* v. *Fisher,* 136 Ill. 111; Newell on Slander and Libel,—4th ed.—secs. 527, 538, 542, 543.) Neither the inducement nor the innuendo is necessary where the defamatory matter is *prima facie* or in itself

actionable. (*Elam* v. *Badger*, 23 Ill. 498; Newell on Slander and Libel,—4th ed.—secs. 531, 543; Joyce on Indictments,—2d ed.—secs. 311, 506.) In the instant case the defamatory meaning is apparent upon the face of the article itself, and the inducement and the innuendo were therefore unnecessary. Both counts of the indictment charge "that the defendant unlawfully, maliciously and willfully did compose and publish, and cause and procure to be published, a certain false, scandalous, malicious and defamatory libel of and concerning" the members of the American Legion. The averment is direct and is sufficient. (2 Bishop on Crim. Proc.—3d ed.—secs. 785, 786.) Hence the·indictment contains a colloquium.

The contention that a libel against a corporation cannot be taken advantage of by its individual members does not arise in this case. Each count of the indictment expressly charges that the plaintiff in error libeled the members of the American Legion. The prosecution proceeded upon the theory that the members of the American Legion, and not the Legion itself, as a corporation, had been defamed by the published article.

Criminal liability for libels rests upon their tendency to provoke breaches of the peace. (*State* v. *Avery*, 7 Conn. 266; *Kennerly* v. *Hennessy*, 68 Fla. 138; Newell on Slander and Libel,—4th ed.—secs. 804, 807, 827; 4 Sharswood's Blackstone's Com. *p. 151; 3 Wharton's Crim. Law,—11th ed.—secs. 1915, 1916; 1 Bishop's Crim. Law,—9th ed.—sec. 540.) The libel need not be on a particular person. It may be upon a family, class, corporation or other body. (*State* v. *Brady*, 44 Kan. 435; *Crane* v. *State*, 14 Okla. Crim. 30; *State* v. *Hosmer*, 142 Pac. (Ore.) 581; *Jones* v. *State*, 38 Tex. Crim. 364; *Palmer* v. *City of Concord*, 48 N. H. 211; *Rex* v. *Osborne*, 2 Barn. K. B. 138.) A libel upon a class or group has as great a tendency to provoke a breach of the peace or to disturb society as has a libel on an individual, and such a libel is punishable even though

its application to individual members of the class or group cannot be proved. *Rex* v. *Osborne, supra; People* v. *Gordon,* 219 Pac. (Cal.) 486; *State* v. *Brady, supra.*

Section 4 of the bill of rights provides that in all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense. No attempt was or could be made by the plaintiff in error to establish the truth of his libelous charges and no good motive or justifiable end could have actuated him to make them.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Justice Heard, dissenting.