## W. L. JONES v. THE STATE.

No. 1563. Decided November 24, 1897.

**1. Libel—Recognizance on Appeal.**

Libel is, eo nomine, an offense which is defined by our statutes, and a recognizance on appeal which recites the offense as "libel," without setting out the constituent elements of the offense, is sufficient.

**2. Indictment—Libel of a Class Where No Person Is Named.**

It is a violation of our statute to libel any sect, company, or class of men without naming any person in particular who may belong to said class, etc.

**3. Same.**

See opinion for the charging part of an indictment for libel, which the court holds is amply sufficient in its allegations, even without the innuendoes used, to impute

to the street car conductors of the city of G., acts disgraceful to them as members of society, and the natural consequence of which was to bring them into contempt among honorable persons.

APPEAL from the Criminal District Court of Galveston. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for libel, penalty assessed being one year imprisonment in the county jail.

The opinion sets out the charging part of the indictment and no further statement is required.

*Wilford H. Smith,* for appellant.—The nature and character of the act upon, which it is proposed to prosecute, as required in article 727, become elements in the definition of the offense, and the indictment is fatally defective in failing to allege them. Nordhouse v. State, 40 S. W. Rep., 804; Calcoat v. State, 37 Texas Crim. Rep., 245; Stewart v. State, 35 Texas Crim. Rep., 391.

The indictment should not only have charged the idea the alleged printed or published matter conveyed, as required by article 727 of the Criminal Statutes, but should have gone further, and pointed out by averment or innuendo what particular act committed on the part of the parties published, that brings them into contempt among honorable persons, or renders them disgraceful, or of what criminal offense they were guilty, as the case may be, that was imputed by said printed or published statement. McKie v. State, 37 Texas Crim. Rep., 544; Cohen v. State, 37 Texas Crim. Rep., 118.

The court erred in overrruling the defendant's second ground of his motion in arrest of judgment, alleging that "the alleged printed and published matter did not in fact convey the idea that the persons referred to therein had been guilty of any penal offense; nor that they had been guilty of any act or omission which, though not a penal offense, is disgraceful to them as members of society, and the natural consequence of which is to bring them into contempt among honorable persons; nor that they have any moral vice or physical or mental defect, or disease which renders them unfit for intercourse with respectable society, and such as should cause them to be generally avoided; nor that they were notoriously of bad or infamous character."

The court errred in overruling the third ground of the defendant's motion in arrest of judgment, alleging "that said printed and published matter can be held to refer to but one person—the conductor causing the injury to a colored woman on the East Avenue L car, and the indictment fails to designate who that conductor was."

The court erred in overruling the defendant's fourth ground of his motion in arrrest of judgment, alleging that "the printed and published matter in said indictment charged is not libelous."

The printed and published matter, "Irish Snides," contains nothing more than severe denunciation and intemperate abuse, prompted by the supposed injury and mistreatment of a colored lady passenger on one of

the street cars, and the court would have to torture and distort the spirit and letter of our statutes woefully to hold such language uttered under such circumstances to be libelous.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of libel. The Assistant Attorney-General moves to dismiss the appeal, because the recognizance fails to recite an offense known to the law. Said recognizance recites that the defendant "stands charged with the offense of libel." This is the only recitation in said obligation of the offense. None of the constituent elements are set out or attempted to be set out. We think that the recognizance is sufficient. Libel is defined to be an offense by the statutes, and is an offense eo nomine, as theft, murder, slander, etc. The motion to dismiss the appeal is overruled.

Appellant filed his motion in arrest of judgment, because the indictment is fatally defective, in that the published statement alleged to be libelous fails to convey the idea that the persons referred to had been guilty of a penal offense or that they had been guilty of some act or omission which, though not penal, was disgraceful to them as members of society, the natural consequence of which was to bring them into contempt among honorable persons; or that they had some moral vice, or physical or mental defect or disease, which rendered them unfit for intercourse with respectable society, and such as would cause them to be generally avoided; or that they were notoriously of bad or infamous character. His second contention is that the printed and published matter could be held to refer to but one person, to wit, the conductor causing the injury to a colored woman on East Avenue L car, and the indictment fails to designate by name who that conductor was; and he generally urges that the published matter is not libelous. Omitting the formal parts of the indictment, it charges that "defendant and W. H. Noble, on the 14th of November, 1896, in the county of Galveston, in the State of Texas, with force and arms, then and there, with intent to injure A. S. Spurgeon" and others, setting them out by name, "did unlawfully and maliciously make, write, print, publish, sell, and circulate a malicious statement of and concerning the said A. S. Spurgeon" and others mentioned, "and affecting the reputation of the said A. S. Spurgeon" and others mentioned, "who were then and there conductors employed by the Galveston City Railroad Company, on the various lines in the city of Galveston, Texas, which malicious statement was of the tenor following, to wit: 'Irish Snides. It is really disgusting, to say the least, for one to take notice and see how the Irish snides employed by the street car company (meaning the Galveston City Railroad Company) as conductors on the various lines of this city (meaning the city of Galveston) discriminate. With a few exceptions, these cowboys, escaped lunatics, and imported lords have a way of their own, and discriminate with a vim. These whelps seem to forget that they are public servants, and treat our

best colored ladies with a contempt that could only be found in a Yale chump. Some few nights ago a colored lady, while dismounting from an East ·L car, was thrown to the ground by the mangy ape that poses as conductor ringing the bell before she was off the step. And the lousy litttle puppy, that scarcely speaks English, said to a white gentleman, that spoke of the danger of such proceedings, that she was a ·'she coon.' Has it come to this? Such pimps. (meaning one who provides the means and opportunities for libidinous gratification; that is to say, a procurer for the lusts of others) as this, men so low that they would willingly sell the virtue of their· sister for a drink, the descendants of Oscar Wilde (meaning ·that they commit the ·crime of sodomy), greasy curs, foul-smelling scavengers, are imported to this country to insult and humiliate the people that help to ·make these enterprises—that build up and support these public affairs. We coons! Some of the best families of America have raised. coons. I expect that foreign whelp is a coon, but the woman in question is a·colored lady. Perhaps I am a coon, but I would not give one drop of my 'cooney' blood for a barrel of the 'blud' of such 'bludy' Irish snides. It's time that the car company should right these wrongs, and employ only respectable, intelligent men, that will do justice to all alike. We pay a nickel, and we demand a nickel's worth. There is too many intelligent men in this country to ·import such beastly bastards to insult the people here.' '". It will be seen by this indictment that all of the parties named in the alleged libelous matter are alleged to be conductors of the Galveston City Railroad Company.

Taking appellant's grounds of his motion out of the order in which he places them, we notice that ground of said motion first which alleges the indictment is insufficient, because it only refers to one conductor causing the injury to a colored woman, etc., and fails to designate by name that conductor. By reference to the libelous matter published, it will be seen that the first sentence in said publication refers to the conductors on the various street cars of this city (meaning the city of Galveston) as a class. The libelous matter makes no exception among the conductors, but includes all of them. This has been held sufficient, without designating the names; and we hold this to be sufficient designation of every conductor in the service of said railroad company at the time of said publication. It therefore would be a violation of our statute to libel any sect, company, or class of men without naming any person in particular who may belong to said class. See 13 Am. and Eng. Enc. of Law, p. 499, and notes; 2 McClain Crim. Law, sec. 1044.

In reply to appellant's contention that the indictment fails to charge said conductors, either directly or by innuendo, with an offense against the laws, or with some act or omission which, though not a penal offense, is disgraceful to said conductors as members of society, or the natural consequence of which is to bring them into contempt among honorable persons, or that they have some moral vice or physical or mental defect or disease which renders them unfit for intercourse with respectable . society, and such as would cause them to be generally avoided, or that

they are of notoriously bad or infamous character, we have this to say: That the first allegation in the indictment, to wit, that one of these conductors caused a colored lady to be thrown to the ground while dismounting from a street car, imputed an assault to one of said conductors belonging to the class charged in the indictment, but does not name him. But concede that we should be in error as to the effect of this allegation; unquestionably the charge that said conductors were pimps, with the innuendo following the same, is such a charge as imputed some act, which, though not a penal offense, was disgraceful to said conductors as members of society, and the natural consequence of which was to bring them into contempt among honorable persons. So of that portion of said publication which charged that said conductors were so low that they would willingly sell the virtue of their sister for a drink. These charges attributed to said conductors that they were of notoriously bad or infamous character; and, as the prosecution in this case was under all of said allegations, if the proof sustained anyone, it was sufficient. It will be further noticed by reference to the allegations in the indictment, that there are innuendo averments contained therein sufficiently explanatory of said statements in said publication. But, if there had not been, we hold that they were sufficient in and of themselves to constitute libel without innuendoes. The statements in the publication were so plain and unmistakable in their meaning that no intelligent person could fail to understand and comprehend what was intended by them. More v. Bennett, 48 N. Y., 472; 2 McClain Crim. Law, sec. 1043, and authorities cited in note 2.

In regard to the remaining question, that the publication is not libelous, under the views herein expressed, it will be seen that such contention is without merit. We think the indictment is sufficient, and the judgment is affirmed.

*Affirmed.*