## 19525, 19526. ALUMBAUGH v. THE STATE (two cases).

Decided April 9, 1929.

*Don H. Clark, E. O. Blalock, W. G. Thomas,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general, Julian Hartridge, Mc-Intire, Walsh & Bernstein, Hitch, Denmark & Lovett,* contra.

LUKE, J. The two records before us present phases of the same case and will be considered together. The record in case No. 19525 questions the correctness of the court's judgment overruling the demurrer to the indictment, and the record in case No. 19526 questions the right of the lower court to proceed with the trial of the case until this court had determined the validity of said demurrer.

The accusation charges Mrs. Ed C. Alumbaugh with the offense of misdemeanor, "for that the said Mrs. Ed C. Alumbaugh, in the County of Chatham, State of Georgia aforesaid, on the 23d day of October, 1928, did unlawfully and maliciously defame, by printing, the honesty, virtue, integrity, and reputation of one who is alive, to wit, N. T. Stafford, of Chatham County, Georgia, and further of another who is alive, to wit, A. R. Winkers, of Chatham County, Georgia, and further of another who is alive, to wit, Thomas F. Walsh, of Chatham County, Georgia, and each of them, and did thereby expose him, the said N. T. Stafford, and him, the said A. R. Winkers, and him, the said Thomas F. Walsh, and each of them, to public hatred, contempt and ridicule, in that the said defendant, the said Mrs. Ed C. Alumbaugh, did, in the City of Savannah, in the said County of Chatham and State of Georgia, on the 23d day of October, in the year of our Lord, nineteen hundred and twenty-eight, unlawfully, wilfully, and maliciously circulate, distribute, and publish a certain printed handbill, which printed handbill contains false printed statements and matters of and concerning members of the Knights of Columbus, a Catholic fraternal order, having a council and an organization in the City of Savannah, within the said County of Chatham and State of Georgia, in that said printed handbill contained, set out, and stated a purported oath of the said Knights of Columbus, which said purported oath was false and untrue; the said Knights of Columbus then and there being a Catholic fraternal order, as aforesaid, of which the said N. T. Stafford, the said A. R. Winkers, and the

said Thomas F. Walsh, and each of them, then and there were, and were known to be, members, and residents of the said City of Savannah in said Chatham County, State of Georgia; and which said false printed purported oath of said Knights of Columbus was then and there in said county and State aforesaid distributed, circulated, and published by the said Mrs. Ed C. Alumbaugh to one J. W. Royal, a resident of said County of Chatham, State of Georgia, and to others whose names are to the solicitor-general of the Eastern Judicial Circuit of Georgia, who prosecutes for the State of Georgia, in the City Court of Savannah, unknown; and the said defendant, the said Mrs. Ed C. Alumbaugh, then and there gave and delivered to the said J. W. Royal a supply of said handbills containing said false printed purported oath of said Knights of Columbus; and the said defendant, the said Mrs. Ed C. Alumbaugh, did then and there employ and hire the said J. W. Royal to distribute, circulate, and publish within said County of Chatham, State of Georgia, said handbills containing said false printed purported oath of said Knights of Columbus, by putting them into automobiles and into houses in said County of Chatham, State of Georgia, so that they might be read by the owners of said automobiles and the persons occupying said houses; and the said false printed purported oath of said Knights of Columbus exposed the said N. T. Stafford, the said A. R. Winkers, and the said Thomas F. Walsh, and each of them, then and there members, and known to be members, of said Knights of Columbus, and the said Knights of Columbus, to public hatred, contempt and ridicule; and said false printed purported oath of said Knights of Columbus, circulated, distributed and published as aforesaid in and by said handbills, tended and tends to blacken the honesty, virtue, integrity, and reputation of the said N. T. Stafford and the said A. R. Winkers and the said Thomas F. Walsh, and each of them, then and there members of the said Knights of Columbus, and the said Knights of Columbus, and thereby exposed them, and each of them, to public hatred, contempt, and ridicule; and said false printed purported oath of said Knights of Columbus, so distributed, published, and circulated by the said defendant, Mrs. Ed C. Alumbaugh, as aforesaid, being as follows, to wit:" Here follows the alleged false oath of the Knights of Columbus. We shall not copy it, but will content ourselves with saying that any citizen of the United States taking it makes of

himself a traitor to his government and a potential murderer of the worst sort.

The demurrer to the accusation is in substance as follows: 1. The accusation charges no crime for the following reasons: (*a*) It alleges that the alleged unlawful and malicious defamation was made of and concerning a Catholic fraternal order, known as Knights of Columbus. (*b*) It expressly avers that no defamation of the character of Stafford, Winkers, and Walsh was made by the defendant of or concerning them or either of them. (*c*) "Said accusation expressly shows that any defamation of the character of said Stafford, Winkers, and Walsh, is a conclusion of the pleader, in that they were members of the Knights of Columbus." (*d*) "Because said accusation does not aver that said defendant knew at the time of the alleged circulation of the reputed oath of the Knights of Columbus that any such organization existed in the said county of Chatham."(*e*) "Because said accusation fails to allege that the said defendant knew that said Stafford, Winkers, and Walsh were members of the Knights of Columbus, or members of any Catholic order." (*f*) "Because said accusation does not aver that said defendant knew at the time of the alleged distribution of the oath of the Knights of Columbus that said oath was false and untrue." (*g*) "Because said accusation expressly shows, by an attached printed circular and made a part thereof, headed, 'To Murder Protestants and Destroy American Government,' that the alleged oath of the Knights of Columbus printed and circulated by this defendant is itself printed from the Congressional Record of the United States, for the 62d Congress, 3d Session, Saturday, February 15th, 1913." (*h*) "Because the said accusation expressly shows that the alleged defamatory language and charges is itself a matter of public record, of the Congressional Record, . . and so became and was at the time of the alleged distribution and circulation an absolutely privileged communication." (*i*) "Because the said accusation does not aver that said Knights of Columbus is a natural person, or any artificial person, but is merely a fraternal order." 2. "Defendant specially demurs to said accusation upon the following grounds: (*a*) In that said accusation does not set out the alleged printed handbill containing the defamatory charges against said Knights of Columbus. (*b*) Because the printed matter attached by way of exhibit of said accusation shows that such exhibit is a detached

fragment of some circular or other paper. (*c*) Because the fragmentary part of the attached circular is so torn and mutilated that it does not show what was the character of the circular distributed by defendant."

The judgment of the trial court upon the foregoing demurrer was as follows: "The within demurrer is overruled upon each and every ground thereof." Was this reversible error?

Of course, if the accusation sufficiently alleges criminal libel of the three persons named therein, it is good as against the general demurrer, whether it does, or does not, as a matter of law, charge a libel of the Knights of Columbus. Therefore, since, to our minds, it fairly appears from a reading of the entire accusation that the solicitor-general seeks to charge that the libel was committed against the individuals named therein, rather than against the order, we shall consider the case from that viewpoint.

"A libel is a malicious defamation, expressed either by printing or writing, or signs, pictures, or the like tending to blacken the memory of one who is dead, or the honesty, virtue, integrity, or reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule. Every person convicted of this offense shall be punished as for a misdemeanor." Penal Code (1910), § 340.

Section 248 of the Penal Code of California is very like the Georgia statute. In so far as it is pertinent to the offense here involved, it reads: "A libel is a malicious defamation, expressed . . by . . . printing . . , tending to impeach the honesty, integrity, virtue or reputation . . of one . . and thereby expose him to public hatred, contempt or ridicule." In passing upon a demurrer to the information, the Supreme Court of California, in People *v.* Turner, 28 Cal. App. 766 (154 Pac. 34), said: "It would seem that a mere statement of the published oath, coupled with an averment that it was false and malicious, would be sufficient to bring the publication within the terms of section 248 of the Penal Code. It would be a severe reflection upon the condition of the law of libel if it permitted to go uncondemned the publication of articles such as this, if false. It is clear that the published oath, if believed by the community to be taken by the members of the fourth degree Knights of Columbus, would have a tendency to expose those persons to hatred, contempt, or ridicule. While the

publication may not, as claimed by the defendant, directly impeach their honesty and integrity, it does in a most direct and vital way, assail their loyalty as citizens by charging them with the taking of an obligation which is, in itself, a violation of their oath of allegiance and of the essential duties and bonds of American citizenship, and this in a general sense impeaches their reputations, and exposes them to those attitudes of public feeling described in the section of the Penal Code." See also Crane *v.* Oklahoma, 14 Okla. Cr. 30 (166 Pac. 1110, 19 A. L. R. 1455).

The alleged objectionable printing as it appears in the paper attached to the indictment is headed in large type: "To Murder Protestants! And Destroy American Government!" "Is the Oath Binding Roman Catholics?" We quote further from the heading of said paper: "It contains everything stated in the RE-PUTED OATH OF THE KNIGHTS OF COLUMBUS. The following form of obligation reprinted from the Congressional Record of the Sixty Second Congress, third session, for Saturday, Feb. 15, 1913." Following the above, and immediately under the words, "KNIGHTS OF COLUMBUS," is printed the alleged oath. Beneath the alleged oath appears the following: "IF THIS IS TRUE, the Oath and Law of the Pope's Government violates the Constitution of the United States and should be investigated by Congress. This is a move of the American People to get Congress to Investigate and See." The paper concludes: "Public Cordially Invited. Hear Protestant's Joan of Arc, MRS. ED C. ALUMBAUGH."

There can be no question as to the libelous nature of the printed matter in the case at bar, and we are well satisfied that the accusation charges that the defendant libeled the individuals named therein by publishing the purported oath as the "reputed oath" of a fraternal order to which they were known to belong.

From what is said above, it is in our opinion apparent that the general demurrer was not good for any reason assigned in paragraph 1, subsections (*a*), (*c*), (*d*), and (*e*). In regard to subsection (*b*), it need only be said that the accusation *does not* expressly aver "that no defamation of the character of N. T. Stafford, A. R. Winkers, and Thomas Walsh, was made by said defendant of or concerning them or either of them." There is no merit in subsection (*f*) of the general demurrer. The accusation alleges

that the oath was false and untrue, and that the alleged libelous matter was maliciously published; and this is sufficient without a specific allegation that the defendant knew of its falsity. Subsections (g) and (h) raise the point that the circular attached to the accusation shows on its face that the purported oath was reprinted from the Congressional Record, and was therefore a privileged communication.

The accusation does not aver that the purported oath was reprinted from the Congressional Record, and we do not think that there is any presumption in favor of the truthfulness of the statement in the handbill that it was. However, for the purposes of this decision, we shall consider the case just as though the alleged oath was reprinted from the Congressional Record. It is true that fair and honest reports of the proceedings of legislative bodies are privileged communications. See Civil Code (1910), §§ 4432, 4436. Nevertheless, we are quite sure that whatever privilege might attach in favor of any member of Congress who may have caused the alleged false oath to be inserted in the Congressional Record will not be extended to other persons, not members of Congress, who maliciously reprint the said oath; and it is alleged in the indictment that the said oath was false and was maliciously published. In *Holmes* v. *Clisby*, 121 *Ga*. 241 (2) (48 S. E. 934, 104 Am. St. R. 103), it was said: "A wilful falsehood can not be uttered in good faith, and therefore can never be the subject of a privileged communication." Indeed, the privilege extended to members of legislative bodies will not be extended to include words spoken by them unofficially, although spoken in the legislative hall while the legislature is in session. 36 C. J. 1260, sec. 239. It would be as dangerous as illogical to say that the mere fact that something had been printed in the Congressional Record would import its verity and warrant any private person in publishing it for any purpose. The alleged oath may have been published in the Record without any purpose to indicate or intimate that it was the oath of the Knights of Columbus. It may have been so published to show precisely the contrary.

Under the view we take of the accusation it is not necessary for us to decide the merit of subsection (i) of the demurrer. However, there is highly respectable authority in other States that a class or a fraternal order may be libeled. See Crane *v.* Oklahoma, supra, and cit.

Grounds (a), (b), and (c) of the special demurrer are "speaking" in nature and clearly without merit.

For no reason assigned did the court err in overruling the demurrer to the accusation.

We direct our attention to case No. 19526. The defendant was charged with criminal libel; a demurrer to the accusation was overruled, and a bill of exceptions was immediately sued out. The case is docketed as No. 19525, and is the same one we have considered above. The case coming on for trial, the defendant filed what is called by her a "demurrer to the record." In that paper she recited that the record to which she demurred consisted of the accusation, the demurrer thereto, the judgment of the court overruling said demurrer, and the bill of exceptions sued out to that ruling. She then alleged that the city court of Savannah was without jurisdiction "to further assign said case for trial or to hear or determine any of the issues therein involved, until said bill of exceptions shall have been heard and determined by the Court of Appeals." The prayer reads: "Wherefore, defendant prays the judgment of the court, sustaining this demurrer to the jurisdiction of said court, and that any other or further proceedings in the trial of said case be dismissed and quashed, until such time as the error assigned in said bill of exceptions shall have been heard and determined by the Court of Appeals." The court overruled the demurrer, and error is assigned on this ruling.

The procedure employed in this case is new to us, but, for the purposes of this decision, we shall consider the question made by the "demurrer to the record" as properly before this court. Of course, the defendant had the right to except either pendente lite or directly to the overruling of her demurrer. She pursued the latter course. Counsel for the plaintiff in error state in their brief that the only question for determination is this: "Did the bill of exceptions, signed and certified by the judge of the city court of Savannah on January 15th, divest that court of jurisdiction to try defendant . . . on the 18th day of January following?" This appears to be a new question as to criminal cases, but not so as to procedure in civil cases. In *Mass. Bonding & Ins. Co.* v. *Realty Trust Co.*, 139 *Ga.* 180 (2) (77 S. E. 86), where one of the defendants excepted directly to the overruling of its general demurrer to an equitable proceeding, and filed a bond pay-

able to the plaintiff, conditioned to pay the eventual condemnation money and all future costs, the court held that the presiding judge, in the exercise of a sound discretion, could have delayed further proceedings until the Supreme Court had passed upon the demurrer, or he could have caused the case to proceed. Referring to the rights of a defendant in such a case under the Civil Code (1910), § 6138, the court said: "He may file a bill of exceptions pendente lite, and except when the case finally terminated, or, if he prefers, he may except directly, although the case is still pending in the trial court. In the latter event the court is not compelled to stay the further progress of the cause, and await the determination of the question thus permitted to be carried up. He may do so in his discretion, but not as a matter of right on the part of the excepting party to have it done; and if the case proceeds pending his exception, the result may be modified or upset by the ruling of this court." See, in this connection, *Montgomery* v. *King*, 125 *Ga.* 388 (54 S. E. 135), which differentiates and limits the decision in *W. & A. Railroad* v. *State*, 69 *Ga.* 524, which is chiefly relied on by the plaintiff in error.

In the absence of any authority sustaining the contention of the plaintiff in error, and in view of the decisions cited above, we hold that the court had the right to proceed with the trial of the case after the judge had signed and certified the bill of exceptions, without waiting for this court to pass upon the validity of the general demurrer to the indictment.

Therefore, we hold that the judgment overruling the demurrer in case No. 19525 was correct, and that the "demurrer to the record" in case No. 19526 was likewise properly overruled.

*Judgment in each case affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*