19694. ALUMBAUGH *v.* THE STATE.

DECIDED JUNE 11, 1929.

*Don H. Clark, E. O. Blalock, W. G. Thomas,* for plaintiff in error.
*Hitch, Denmark & Lovell, Walter C. Hartridge, solicitor-general,*
contra.

LUKE, J. The accusation in the city court of Savannah charged in substance that Mrs. Ed C. Alumbaugh did, by printing, maliciously defame the honesty, virtue, integrity and reputation of named citizens of Chatham county, Georgia, who were alive; and did expose them to hatred, contempt, and ridicule, in that the said Mrs. Alumbaugh did, in the City of Savannah, Chatham county, Georgia, on the 23d of October, 1928, unlawfully, wilfully, and maliciously circulate, distribute, and publish certain printed handbills containing false statements concerning the Knights of Columbus, a Catholic fraternal order having an organization in the City of Savannah, which handbills contained a purported oath of the Knights of Columbus which was false; that defendant hired one Royal to distribute said handbills in Chatham county, Georgia; that the three alleged defamed persons were known to be members of the Knights of Columbus, and that the circulation of this said purported oath exposed the three named parties and others to public hatred, contempt, and ridicule, and tended to blacken their honesty, virtue, integrity, and reputation.

Defendant demurred to the accusation and record in said case upon the ground that said city court was without jurisdiction to hear, try, or determine said case, for the reason that the same was then pending upon direct bill of exceptions in the Court of Appeals upon demurrer to the accusation; and then moved the court to suspend any trial of said case until the determination of said writ of error in said Court of Appeals; which motion the court overruled and denied. To this ruling defendant excepted pendente lite, and in her bill of exceptions "assigns as and for error the judgment of the court so overruling and denying her said motion to suspend the trial of said case set out and assigned in her said bill of exceptions pendente lite." Defendant assigns error also upon the overruling of her motion for a new trial.

The first assignment of error was settled adversely to the plaintiff in error in the case of *Alumbaugh* v. *State,* 39 *Ga. App.* 559 (2) (147 S. E. 714), where the court held that it was "not error for the judge to proceed with the trial of the case without waiting for the appellate court to pass upon the validity of the demurrer."

The procedure and the verbiage in this case are somewhat unusual. For one instance, "defendant demurred to the accusation and record" on the ground that a "demurrer to the accusation" was pending in this court. The record is voluminous, and many of the twenty-three special grounds of the motion for a new trial are defective. In the light of the record before us, it will serve no good purpose to discuss the various grounds of the motion at any great length and in detail.

The 1st, 2d, 4th, 5th, and 7th special grounds of the motion for a new trial present in the main the same points that were presented by the demurrer to the accusation, and which were decided against the plaintiff in error in *Alumbaugh* v. *State,* supra. So far as these special grounds are not covered by our previous rulings, they are without merit, and some are refuted by the record. For instance, the first special ground alleges in part that the court refused to charge the jury that "the burden rests upon the State to show to your satisfaction, and beyond a reasonable doubt, that the defendant is guilty of the offense charged; the State must show that this defendant is guilty of the offense of malicious defamation," etc. By reference to the charge we find that the court did charge: "Every person charged with crime is, by law, presumed to be innocent until proven guilty beyond a reasonable doubt, and the burden is upon the State to prove such guilt beyond that doubt. . . The facts are for your determination. . . Determine whether or not this is a false oath, whether it was published or circulated by the defendant or by her procurement, whether or not it was malicious," etc. "If there has been a failure to establish any one of these elements, . . to establish them, or any one of them, by evidence which convinces you beyond a reasonable doubt, then you would have to find her not guilty."

The substance of the 3d special ground is that the court erred in refusing to charge that in order to convict for the publication and circulation of the alleged false oath, it must be shown by the State to be malicious. The court fairly, repeatedly, and emphatically charged that malice must be proved by the State. In doing this the court was not required to adopt the exact language requested by the plaintiff in error.

The 6th special ground alleges that the court erred in charging

that the State must show that the defendant committed the offense "at some time within two years prior to the date of the accusation." This charge was beneficial to the defendant rather than harmful.

The 8th special ground alleges error upon the refusal of the court to permit, upon the voir dire of jurors, the following question: "Are you an employer of a Knight of Columbus?" This was not error. An employee of a Knight of Columbus might be averse to rendering a verdict against his employer's interest and thereby jeopardizing his own interest; but the employer can not be discharged, or have his wages reduced, by the employee. So far as the record shows, there was no employee of a Knight of Columbus, no Knight of Columbus, and no Catholic, on the jury which tried the defendant.

The court did not err in refusing to permit a witness to testify whether or not the oath in question was ever published in any other State, as alleged in the 9th special ground. The publication, or the non-publication, of the alleged false oath in another State was irrelevant and immaterial to the issue on trial in this State.

The court did not err in refusing to permit a witness to testify as to the contents of the circular in question, as alleged in the 10th special ground. The circular itself was the best evidence of its contents.

The court did not err, as alleged in the 11th special ground, in permitting a witness to testify: "Yes, I know Mr. Walsh, and he is generally known in the community as a Knight of Columbus." The gravamen of the offense was that the defendant maliciously published and circulated a false oath as the oath which was taken by the Knights of Columbus, and that this act defamed, and constituted a libel against, Mr. Walsh and others who were known in the community to be members of the Knights of Columbus. Hence the relevancy of this testimony. For the same reason, it was not error to permit a witness to identify the city directory, and to admit it in evidence, since the directory showed that the Knights of Columbus had a council at Savannah, and some of the parties alleged to have been defamed were officers thereof. This tended to show that they were known in the community as Knights of Columbus. This disposes of grounds 12 and 13.

The court did not err in permitting the State to introduce and

read to the jury a part of the circular in question, as alleged in the 14th special ground. The court stated that the defendant could introduce and read the remainder of the circular if she wished, and later the entire handbill was put in evidence. Hence, no possible harm accrued to the defendant.

The 15th special ground is covered by our discussion of special ground 11, and shows no error.

The 16th and 17th special grounds allege error because the court refused to permit the witness Walsh, as a Catholic and Knight of Columbus, to give the meaning of the word "heretic," which word was used in the oath alleged to have been circulated by defendant. Had Mr. Walsh published and circulated the oath, he might be presumed to know the meaning of the words contained therein. But Mr. Walsh did not publish or circulate the oath, but on the contrary, as prosecutor, contended that the oath was false. Furthermore, the general acceptance of the term in the community where the alleged oath was circulated, rather than the meaning given it by persons of any one creed, would apply, under the issues involved in this case. Besides, Mr. Walsh did at a later stage in his testimony give his understanding of the term.

Special grounds 18 and 23 assign error upon the court's refusal to permit the witness to answer hypothetical questions in reference to a conflict between the rules of the Catholic Church and the Knights of Columbus. These questions were wholly irrelevant to the issues involved. The other question in ground 18, as to the meaning of the word "heretic," has been covered by previous reference herein.

The 19th special ground of the motion alleges error because the court refused to permit a witness to answer the question: "Have you ever seen this oath in print in the Congressional Record?" The issue involved in this case was not whether the oath was published in the Congressional Record, but whether the oath was false, and was maliciously published and circulated in Chatham county, Georgia, by the defendant, to the injury, by defamation, of the parties named in the accusation. The mere fact that the oath may have been published in the Congressional Record does not necessarily establish its verity or bring it within the sphere of a privileged communication so as to authorize its republication by another. It may have been published in the Congressional Record

for the purpose of showing its falsity and defamatory character. In this event, it certainly could not properly be published elsewhere as a true oath, and the publisher be protected under the claim that it was a privileged communication.

The 20th special ground alleges error because, when the question "Who agreed to put up the funds?" was asked, the court said, "We are going too far, we will stop right where we are in that line." There was no error in this, because the witness had previously testified: "I am the prosecutor in this case, and not the Knights of Columbus organization. I employed counsel to prosecute the case, and not the Knights of Columbus. As to who put up the money for counsel, there is no money put up yet for that purpose." The court's ruling worked no harm to the defendant.

Four rituals of the local council of the Knights of Columbus were offered in evidence, and four rituals of the Knights of Columbus certified by the Supreme Secretary of the order were offered in evidence. Mr. Walsh, a witness for the State, identified the rituals used by the local council. The rituals were admissible to show the true obligation taken by Knights of Columbus. This disposes of the 21st special ground of the motion for a new trial. The 22d special ground is not approved by the trial judge.

Since reference to the oath appearing in the Congressional Record has necessarily been made in this opinion, we deem it proper, in order to render more comprehensible the issue involved, to state briefly the character of the publication in question. The part of it pertinent to the issue here is included in the record in this case. It discloses that one Bonniwell, a Knight of Columbus, was defeated as a candidate for the House of Representatives from the seventh congressional district of Pennsylvania by one Butler. Bonniwell filed a notice of objection to Butler's being seated. As one ground of objection, he urged that during the campaign supporters of Butler circulated "a blasphemous, infamous libel, a copy of which is hereto attached, pretended to be an oath of the Knights of Columbus, of which the contestant is a member;" and that "so revolting are the terms of this document, and so nauseating its pledges, that the injury it did, not merely to the contestant, but also to the Knights of Columbus and to Catholics in general, can hardly be measured in terms." Butler's reply was: "That this paper was circulated through this con-

gressional district during this campaign I both admit and regret. I deny that I had anything to do, directly or indirectly, with either its publication or its circulation." The committee to which the matter was referred said: "'This committee can not condemn too strongly the publication of the false and libelous article referred to in the paper of Mr. Bonniwell, and which was the spurious Knights of Columbus oath, a copy of which is appended to the paper. It also condemns the publication of editorials to excite religious prejudice in a political campaign. No man should be persecuted for his religion, whether he be Catholic or Protestant."

From the foregoing it is clearly shown that the Congressional Record condemned the publication of the alleged oath and denominated it as false, libelous, and spurious. This is the oath that the defendant is alleged to have circulated in Chatham county, Georgia. As was stated in the decision when this case was previously before us on another issue (39 *Ga. App.* 561), "We shall not copy it, but will content ourselves with saying that any citizen of the United States taking it makes of himself a traitor to his government and a potential murderer of the worst sort."

The judge was entirely fair to the defendant in charging the jury. He instructed them as to the essential elements of the crime, and charged them that if the State failed to prove a single one of these elements beyond a reasonable doubt, they should find the defendant not guilty. The judge also, lest he should infringe upon the defendant's legal rights, allowed her unusual latitude in making her statement, and permitted her to wander into matters wholly irrelevant to the issue involved.

The State proved to the satisfaction of the jury that the purported oath was false, that it was maliciously circulated by the defendant, and that its circulation tended to blacken the honesty, virtue, integrity, and reputation of the parties alleged to have been defamed, and exposed them to public hatred, contempt, and ridicule. The defendant did not deny that she circulated the oath, and did not deny that it was false. Neither did she introduce any Congressional Record other than the one from which we have quoted; and the defendant, or any one else reading that Record, must necessarily have known that the oath was therein branded as false and libelous.

The evidence abundantly authorized the defendant's conviction.

Upon the record she has had a fair and legal trial of her case. For no reason pointed out in the record did the court err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*