THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT EDWARD EDMONDSON, Defendant.*

Court of General Sessions of County of New York, May 10, 1938.

*Thomas E. Dewey, District Attorney [Barent Ten Eyck* and *Frank A. P. Severance, Assistant District Attorneys,* of counsel], for the plaintiff.

*John S. Wise, Jr.,* for the defendant.

WALLACE, J. Three indictments were returned against this defendant on June 11, 1936. Each charges a violation of sections 1340 and 1341 of the Penal Law, *i. e.,* the crime of publishing a libel. In one of the indictments the person alleged to be libeled is Frances Perkins; in another, Virginia C. Gildersleeve. The third indictment charges a libel against " All persons of the Jewish Religion."

Since the filing of these indictments, various motions have been made by the defendant to inspect the minutes of the grand jury, to dismiss the indictments, to withdraw the plea of not guilty and interpose a demurrer, etc. All of these motions have been denied. Recently, when this case appeared on the calendar, motions were made by attorneys for the American Committee on Religious Rights and Minorities, the American Jewish Committee, the American Jewish Congress, the Human Relations Committee of the National Council of Women and the American Civil Liberties Union, asking leave to be permitted to intervene as *amicus curiæ* and to file briefs. These motions were granted and briefs were filed. In these briefs the attorneys for these various organizations,

---

* See, also, 168 Misc. 141.

while they denounce the act of the defendant in publishing the matter complained of, nevertheless, state their belief that sound public policy, looking to the safeguarding of the rights of free speech, of a free press and of religious liberty, makes it highly desirable that the court, in furtherance of justice, on its own motion, dismiss the indictments against this defendant.

It is argued that it is doubtful whether the statute dealing with criminal libel can be extended, as a matter of law, to apply to invective against a group so widespread and difficult to particularize or identify as all the members of a race or " all persons of a religion."

It is also argued that it is still more doubtful whether it would be in the public interest in the long run for such a charge to be sustained.

I am disposed to consider seriously both of these arguments.

It is of the utmost importance that there be, in a nation in which suffrage is granted to all adults, freedom of discussion and of criticism in religious and public affairs. The most effective restraint upon the abuse of that freedom is in the good taste of the participants, or, if that fail, as it often does, in the knowledge that defamatory and abusive attacks are self-defeating.

There can be no doubt that this court has power, under section 671 of the Code of Criminal Procedure, to dismiss these indictments. This section follows: " The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed. In such a case a written statement of the reasons therefor shall be made by the court and filed as a public record." Section 1340 of the Penal Law defines libel as: "A malicious publication by writing * * * which exposes any living *person*, or the memory of any *person* deceased, to hatred, contempt, ridicule or obloquy, or which causes or tends to cause any *person* to be shunned or avoided, or which has a tendency to injure any *person, corporation* or *association of persons*, in his or their business or occupation."

Section 1342 of the Penal Law provides as follows: " The publication is justified when the matter charged as libelous is true and was published with good motives and for justifiable ends.

" The publication is excused when it is honestly made, in the belief of its truth and upon reasonable grounds for this belief, and consists of fair comments upon the conduct of a *person* in respect of public affairs, or upon a thing which the proprietor thereof offers or explains to the public." (Italics by the court.)

It may be, as the learned district attorney suggests in his trial brief, that section 35 of the General Construction Law permits us to construe the word " person " to mean persons or a number

of individuals; and, of course, a malicious publication, which has a tendency to injure any *person, corporation* or *association* in their business or occupation is indictable under our Penal Law. But reading this and other pertinent sections of the Penal Law and the Code of Criminal Procedure and construing them in the light of the common law, the intent of the Legislature is clear.

It intended to personalize or individualize the corporation for the purpose of bringing it under the protection of the statute and to limit the application of the statute to libels against individuals, or some definitely limited group, such as a corporation, or an association, *i. e.*, a partnership or an unchartered group similar to a corporation.

Section 1346 provides that the libel indictment may be returned or prosecuted within " the county where the *libeled party* resides, or the county in which the libel is published."

The term " libeled person " or " libeled party " occurs not only in sections 1346, 1348 and 1351, but also in sections 138 and 289 of the Code of Criminal Procedure. Thus, it would seem, from a reading of the relevant statutes, that in this State a natural person, or a corporation or association of persons, that is, a limited group, the members of which can be particularized or readily identified, can be the subject of a criminal libel.

The question now to be considered is whether or not the statute has been or should be extended by judicial construction so as to sustain an indictment for invective directed against much larger groups, such as all the Jews, or all the Christians, or all the Democrats, or all the Republicans.

I have carefully read the authorities on this subject, both in this country and in England, and it is my opinion that such an indictment cannot be sustained under the laws of this State, and that no such indictment as one based upon defamatory matter directed against a group or community so large as " all persons of the Jewish Religion " has ever been sustained in this or any other jurisdiction.

It has been urged that the prevailing rule in England, based on the old case of *Rex* v. *Osborn* ([1732] 2 Barn. [K. B.] 166), supports the theory that a criminal libel can be based upon a defamatory statement concerning such an extensive community. I do not agree with this conclusion. Fortunately, as recently as May 1, 1936, Mr. Eustace Fulton, Counsel to the Crown, under instructions to advise from the Director of Public Prosecutions in England, gave an opinion on the rule in this case. His opinion was sought and given on a proposed charge of defamatory libel against the Imperial Fascist League, or members thereof, for defaming the Jewish community in London, England.

Mr. Fulton carefully reviews the case of *Rex* v. *Osborn (supra).* In 1732, when this case was reported, there were no official court reporters, and various individuals wrote reports of the decisions. In the case of *Rex* v. *Osborn* two different and conflicting reports have come down to us.

In 2 Barn. [K. B. 1732], pages 138 and 166, the case is reported as follows: " Mr. Fazakerly moved for an information against one Osborn for printing a libel reflecting on the Portuguese Jews, that lately come over, in charging them with being guilty of burning a bastard child begotten by a Christian on the body of a Jewish woman. He said too, that several Jews had been insulted by the mob on this occasion. Lord RAYMOND said, that he believed the court could do nothing in this matter, by reason that no particular Jews could be able to show the court, that they were pointed at more than any others, and thought that Lord Chief Justice HOLT was of this opinion in the case of *Orm and Nut.*"

There follows at page 166 a report of the decision of the court as follows: " The court said that in the present case it is related in the paper that the fact there told is a fact which the Jews have frequently done, and, therefore, the whole community of the Jews are struck at. And wherever that is the case they thought this court ought to interpose. Accordingly they made the rule absolute." It would seem to follow from this report that the court made absolute a rule asking that an information issue under these circumstances for libel.

However, in another and fuller report of the argument on the rule, the judgment of the court is reported as follows (See Kelynge's Reports at p. 230): " *This is not by way of information for libel that is the foundation of this complaint,* but for a breach of the peace, in inciting a mob to the destruction of a whole set of people; and though it is too general to make it fall within the description of a libel, yet it would be pernicious to suffer such scandalous reflections to go unpunished. We do not give any present judgment in this affair, but we think this is a fact proper to be tried."

Mr. Fulton concludes: " I have no doubt that this [the Kelynge's] report accurately represents what the judges said, and that they were in effect saying that although these facts do *not* disclose evidence which would justify proceedings for defamatory *libel, since no individual is directly or by implication libeled,* yet proceedings will lie for what is in effect a public mischief."

Thus, we see that the rule in *Rex* v. *Osborn* is that an indictment for criminal libel cannot be predicated upon defamatory matter

directed against a group or community, unless some individual is also directly, or by implication, libeled.

This is consistent with the rule in *King* v. *Alme and Nott* ([1700] 3 Salk. 224), which holds that invective against mankind in general is not a libel because of its failure to descend sufficiently to particulars. The rule indicated here seems to be that the object of the libel must be a definite or readily ascertainable person or persons.

The rule in the *Osborn* case is also followed in *Rex* v. *Gathercole* ([1838] 2 Lewin, 237). In this case the libel consisted of allegations of immorality in the Catholic nunnery at Scorton. ALDERSON, B., in his direction to the jury, said (at p. 254): " The point is, whether this is only a libel on the whole Roman Catholic Church generally, or on Scorton Nunnery. In the *former case, the defendant is entitled to an acquittal.*" Further, on the same page, he says: " A person may, without being liable to prosecution for it, attack Judaism, Mahomedanism or even any sect of the Christian Religion (save the established religion of the country.) " And, further, he says: " Consider, therefore, whether what you have heard read [that is, the alleged libel] was intended by the defendant as a mere illustration of his general opinion expressed with regard to the Roman Catholic Church, or whether it was his intention to impute specifically to the individuals at Scorton, the conduct which the language of his publication suggests." The exception in this decision as to the established church probably means that an indictment might lie for seditious libel in the case of an attack on the established church as a branch of the government. The crime of seditious libel is unknown in our jurisdiction. This rule in the *Osborn* case is reiterated in the case of *La France* v. *Malcomson* (1 H. L. C. 637). There it was held to be necessary that a libel directed to a community should involve an individual, but that if it can be shown to apply by innuendo to any one individual, an action will lie.

It is significant that in the recent case of *The King* v. *Leese and Whitehead* (1936), which involved the printing in a Fascist paper of defamatory matter attacking the Jews in London, that although there were six counts in the information against the defendants, four charging seditious libel, and the last two conspiracy to effect a public mischief and effecting a public mischief, the case went to the jury on the last two counts of the information. There was no count in the information which charged defamatory libel.

It seems clear, therefore, that the prevailing rule in England is that an information for a criminal libel will not lie against a group or community unless some individual member thereof, directly or by implication, is libeled.

There is no case in this State which holds that a criminal libel can be predicated upon invective directed against a group or class. There is, however, dictum in a few cases to the effect that an indictment would lie on defamatory matter directed against a group or class.

In *Sumner* v. *Buel* ([1815] 12 Johns. 474), a civil action for damages brought by an officer of Colonel Lockwood's regiment against the defendant for a libel of the whole regiment, the court said, by way of dicta, that while it must grant a motion in arrest of judgment because of the absence of an allegation of special damage, yet it believed that an indictment for a criminal libel would lie in such a case.

In the case of *Ryckman* v. *Delevan* ([1840] 25 Wend. 186), also an action for damages for civil libel, the Chancellor of the Supreme Court of Adjudicators, now the Court of Appeals, said, by way of dicta: " There are many cases in the books where the writers and publishers of defamatory charges, reflecting upon the conduct of particular classes, or bodies of individuals, have been proceeded against by *indictment or information*, although no particular one was named or designated therein to whom the charge had a personal application. *All those cases, however, whether the libel is upon an organized body of men, as a legislature, a court of justice, a church or a company of soldiers, or upon a particular class of individuals, proceed upon the ground that the charge is a misdemeanor, although it has no particular personal application to the individual or the body or class libeled, because it tends to excite the angry passions of the community, either in favor of or against the body or class in reference to the conduct of which the charge is made, or because it tends to impair the confidence of the people in their government or in the administration of its laws. It was upon this ground alone that the information was finally sustained in the case of The King v. Osborne* (2 Barnard Rep. 138, 166). * * * *The Supreme Court was therefore right when it decided that private suits could not be sustained for this class of libels, and that the only proper mode of proceeding against the libellers in this State is by indictment.*" (Italics not in original.)

Although the writer here states that there are many cases in the books in which defamatory statements against classes or bodies of individuals have been proceeded against by indictment or information, the case cited is the old case of *King* v. *Osborn* (*supra*), which does not support this view.

In *People* v. *Eastman* ([1907] 188 N. Y. 478), a case brought under section 317 of the Penal Law, which made it a crime to publish obscene and indecent literature, the defendant was indicted

for publishing a writing which attacked the Roman Catholic church. The Court of Appeals in a *per curiam* opinion affirmed the order sustaining the demurrer to this indictment on the ground that the publication was not indecent or obscene within the meaning of section 317. CULLEN, Ch. J., in the concurring opinion, and purely by way of dicta, indicated that a prosecution for criminal libel might lie in such a case. He cites *Sumner* v. *Buel* (*supra*) and *Palmer* v. *City of Concord* (48 N. H. 211); *State* v. *Brady* (44 Kan. 435; 24 P. 948).

There is nothing more written on this subject in the New York cases pertinent to the present inquiry. My attention has been directed to a number of cases in other States, and it has been argued that in them we may find legal authority to justify the sustaining of the instant indictment.

*Palmer* v. *City of Concord* (*supra*) was a suit for the recovery of damages against the city of Concord, under a statute which gave an action against the city, where property was destroyed by a mob. Another statute provided that there could be no recovery if the destruction or damage was caused by the plaintiff's own illegal or improper conduct.

The plaintiff Palmer, in 1861, published in his paper in Concord certain articles attacking the Union army, then fighting in Virginia and other places in the South. These attacks, naturally, aroused the ire of the citizens of Concord, N. H., and a mob, consisting of soldiers of the First New Hampshire Volunteers, and other persons then in Concord, destroyed his printing plant. He sought to hold the city liable under the statute, and the city defended the action, claiming that the damage or destruction was due to his illegal ank improper act in publishing the articles which incited the riot.

The court held that his action in publishing these articles was both illegal and improper. Illegal because the articles were, in the opinion of the court, criminally libelous and improper, because his conduct in publishing such articles, under the circumstances, was not the conduct of a man of ordinary care and prudence under the same circumstances.

But the court, while holding that the articles published were criminally libelous against the soldiers of the Union army, said: " Cases may be supposed where publications, though of a defamatory nature, have such a wide and general application that in all probability a breach of the peace would not be caused thereby, but it does not seem to us that the present publication belongs to that class."

The publication in this case, in fact, incited a breach of the peace. It does not seem to have been necessary for the court to have found that the publications in question were indictable as criminal libels, because any *illegal or improper conduct* on the part of the plaintiff, which resulted in the destruction of his property, would have made out a good defense to his action.

In all events, this was a civil action for damages, and, apparently, no prosecution against Palmer for criminal libel was ever based on the publications in question.

In *State* v. *Brady* ([1890] 44 Kan. 435; 24 P. 948) the defamatory matter was directed against the Harvey *family* and *certain individual members of it,* and the indictment alleged that this family and some of its members had been libeled. The court here said that it is elementary that a criminal libel need not be against a particular person, but may be made upon a family or class of persons, if the tendency of the publication is to stir up riot and disorder and incite to a breach of the peace. The group held to be libeled here was a very limited one, and individual members of it were libeled directly and by implication.

In *People* v. *Gordan* (63 Cal. App. 627; 219 P. 486) the information alleged in substance that the defendant, as owner and publisher of a magazine called the *Crusader,* published a false and malicious libel concerning the members of the Fourth Degree, Knights of Columbus, and of and concerning *one David Supple,* a member of that organization. The rule is laid down in this case that in order to render a person liable to prosecution for publishing or circulating libelous matter it is not necessary that such matter *name* the individuals, or any of them, comprising the class against whom the matter complained of is published. Nevertheless, the information alleged that not only the members of a class, *i. e.,* the Fourth Degree, Knights of Columbus, were libeled, but also charged a libel against an individual member of that class. Thus, this case is only authority for the rule that criminal libel can be based on invective directed against a limited group or class, if an individual is directly or by implication libeled.

In *Crane* v. *State* (14 Okla. Cr. 30; 166 P. 1110) the information also charged a libel against the Fourth Degree, Knights of Columbus, and *several individuals* who were members of the Fourth Degree, Knights of Columbus, living in Canadian county, Okla. This case is authority for the rule that a group, as easily ascertainable, as clearly defined and as limited as a certain degree of a secret society in a certain community, may be criminally libeled. Here, also, individuals were libeled.

In *Jones* v. *State* (38 Tex. Crim. 364; 43 S. W. 78) the indictment alleged that the persons libeled were an *individual* named A. S. Spurgeon, and others, who were conductors employed by the Galveston City Railroad Company. The libelous matter did not name Spurgeon, but the libel, by innuendo, attached to him. The court said here: "The libelous matter makes no exception among the conductors, but includes all of them. This has been held sufficient without designating the names; and we hold this to be sufficient designation of every conductor in the service of said railroad company at the time of said publication." What the court really held here was that libelous matter in general terms may sufficiently identify the members of a class, so that they may be held to have been libeled by implication. The libeled class again was a limited one.

In *State* v. *Cramer* (193 Minn. 344; 258 N. W. 525) the indictment charged the defendant, as editor of a newspaper, with libeling certain individuals named in the indictment and other persons unknown to the grand jury, all such persons being associated together under the name and style of the Citizens Alliance of Minneapolis, a voluntary unincorporated association. Again, the group libeled is a limited one, and certain individuals are held, by implication, to be libeled.

In *People* v. *Turner* (28 Cal. App. 766; 154 P. 34) the information charged that the defendant, proprietor and editor of a newspaper, committed the crime of libel in that "he unlawfully and wrongfully caused to be printed and published in said paper in Santa Cruz County, of and concerning *the prosecuting witnesses, who lived in that county* and *who were members of the Fourth Degree of that certain fraternal organization known and called the Knights of Columbus,*" certain statements. Again, the group libeled is a limited one and some individuals are, by implication, libeled.

In *Alumbaugh* v. *State* (39 Ga. App. 559; 147 S. E. 714) the indictment accuses Mrs. Ed. C. Alumbaugh, in the county of Chatham, State of Georgia, of unlawfully and maliciously defaming, by printing, the honesty, virtue, integrity and reputation of one who is alive, to wit, N. T. Stafford, of Chatham county, and *several other individuals*, in that the defendant did willfully and maliciously circulate a certain printed handbill containing false printed statements (*i. e.*, the spurious oath of the Fourth Degree, Knights of Columbus).

The defendant demurred to the indictment on the ground that there was no defamation of the character of the individuals named in the indictment, and that the accusation expressly shows that any defamation of the character of these individuals was a con-

clusion of the pleader in that they were members of the Knights of Columbus. The printed matter complained of here did not name any of the individuals who were alleged in the indictment to have been libeled. The trial court overruled the demurrer. The Court of Appeals in its decision said: " Of course, if the accusation sufficiently alleges criminal libel of the three persons named therein, it is good as against the general demurrer, whether it does, or does not, as a matter of law, charge a libel of the Knights of Columbus. Therefore, since, in our minds, it fairly appears from a reading of the entire accusation that *the Solicitor-General seeks to charge that the libel was committed against the individuals named therein, rather than against the order, we shall consider the case from that viewpoint.* * * * There can be no question as to the libelous nature of the printed matter in the case at bar, and we are well satisfied that the accusation charges that the defendant libeled *the individuals* named therein by publishing the purported oath as the ' reputed oath ' of a fraternal order to which they were known to belong." Again, we have a libel against a limited group, with certain individuals, by implication, libeled.

In *People* v. *Spielman* (318 Ill. 482; 149 N. E. 466) one Arthur Lorenz and Sidney Spielman were jointly indicted for criminal libel. Spielman was not apprehended, and Lorenz moved to quash the indictment. The motion was denied, and he was thereafter tried and convicted before a jury and sentenced to the house of correction. On a writ of error from the Appellate Court for the First District, the judgment of the criminal court was affirmed. Lorenz prosecuted this writ of error for a further review in the Supreme Court of Illinois.

The indictment consisted of three counts. The first count charged in substance that Spielman and Lorenz " contriving and intending to villify and defame the members of the American Legion, *a corporation*, to bring them into public scandal and disgrace, to injure and aggrieve them, to impeach their honesty, integrity, virtue and reputation, and to publish their natural defects and thereby expose them to public hatred, contempt, ridicule and *financial injury*, unlawfully, maliciously and wilfully * * * published in a certain newspaper * * * circulated in Cook County a certain false, scandalous, malicious and defamatory libel of and concerning the members of the American Legion."

The second count in the indictment charged the defendant, by the same article, with libeling *eleven individuals* who were members of the American Legion in Cook county. The third count charged the defendant with libeling seven deceased persons. Upon this count, however, a *nolle prosequi* was entered.

The court held here that the defamatory articles were libelous, both as to the membership of the American Legion generally and the individual members of that body mentioned in the indictment.

The court further said: " The contention that a libel against a corporation cannot be taken advantage of by its individual members does not arise in this case. Each count of the indictment expressly charges that the plaintiff in error libeled the members of the American Legion. The prosecution proceeded upon the theory that the members of the American Legion, and not the Legion itself, as a corporation, had been defamed by the published article.

" Criminal liability for libels rests upon their tendency to provoke breaches of the peace. * * * The libel need not be of a particular person. It may be upon a family, class, corporation or other body." Here, we have a libel directed against a corporation and certain individuals named in the indictment who were, by implication, libeled.

In *Drozda* v. *State*, in the Court of Criminal Appeals of Texas (86 Tex. Crim. 614; 218 S. W. 765), the defendant was charged with libel and slander. The information set forth an alleged libelous article published by the defendant in a foreign tongue, which related to the Bohemian National Alliance. It was held insufficient to state an offense, as not showing to what particular persons the libelous statements were directed. LATTIMORE, J., wrote as follows:

" It is also contended that the alleged libelous article was of such indefinite and general character as that it could not by averment be made to support a charge of libel. If we be correct in this opinion as to what we suppose to be the English translation of the alleged libelous article, stripped of its explanatory averments, we are of the opinion that the innuendoes, as used, are not sufficient. The *purpose of the libel law is to punish him who maliciously imputes to others in writing, etc., disgraceful conduct, bad character, crime, etc., and unless there be that in the alleged libelous publication per se which would tend to indicate the person or persons aimed at, or meant to be attacked, it is difficult for us to conceive how innuendo could impart to the language used, the specific personal criminal intent necessary. A government or other body politic, a corporation, religious system, race of people, or a political party, are not subject to criminal libel.* Nor could a publication referring generally to any of these be made specific or libelous merely by inserting in the indictment at the dictum of the pleader, innuendoes stating that particular persons, members of such a party, religious system, or body politic, were meant.

" In our view, it is necessary that in such publication there be matters which to the persons to whom the same is communicated, would fairly tend to particularize and thus affect the persons alleged to be so libeled."

" *A man who scurrilously attacks the Smiths, Johnsons, Joneses, or the Jews, Gentiles, or Syrians, Democrats, Republicans, Populists, or office holders in general, could not be successfully hauled into court and convicted of libel of any particular person, unless there be something in such article which by fair interpretation thereof, tended to bring into disrepute some particular person or persons.*" Here, the court says that the object of the criminal law is to punish one who maliciously imputes to others in writing disgraceful conduct, bad character, crime, etc.

Our statute condemns writings which expose any living person, or the memory of any person deceased, to hatred, contempt, ridicule or obloquy, or which may tend to cause a person to be shunned or avoided, or may injure a person or corporation in *his* or *their business*. The statute seems to imply that the gravamen of the crime is the harm done to the individual in his community.

The American and English Encyclopedia of Law ([2d ed.] vol. 18, p. 1121), in citing the cases of *Rex* v. *Osborn*, etc., states that the gist of the offense in criminal libel is the tendency to stir up riot and disorder, or to provoke a breach of the peace. Similar language is frequently found in cases in which the court justifies the extension of the criminal libel laws to cover instances in which groups of persons are the object of published attacks but where it is difficult or impossible to show damage to any individual of the group assailed.

Whether the writers mean that defamatory matter directed to a group should be considered libelous when it tends to incite the persons assailed to a breach of the peace, or whether they mean it should be held libelous when it incites others to breach the peace by attacking those defamed, is not always clear. In the English cases, the breach of the peace usually was committed by persons who were incited to attack those defamed, and this was the breach of peace the writers had in mind. In 34 Columbia Law Review (p. 1322), published November, 1934, the author, in discussing this subject at page 1344, said: " While injury to reputation is the root of the *private* suit, the traditional basis of criminal prosecution for libel is its tendency to create a breach of the peace because of the *intense indignation arising from insult.*"

Here, the view taken is that the breach of the peace contemplated is that which the persons assailed may be incited to commit, because of their resentment of the defamatory publication.

Putting aside the consideration of the rational basis of criminal prosecution for libel, I am of the opinion that the soundest rule that has been enunciated on the subject of group libel is this: That an indictment cannot be predicated upon defamatory writings assailing a class or group unless directly, or by implication, some individual is libeled.

As we read the indictments returned in cases in which groups were held to be libeled we note that the pleaders almost invariably charge in the indictment that some individual is, directly or by implication, libeled.

They seem, consciously or unconsciously, to have reached the conclusion that there can be no criminal libel of a group unless some individual is shown to have been affected by it. At all events, there is certainly nothing in the law of this State, nor in any of the cases cited, which justifies a finding that an indictment will lie, based on defamatory matter directed against so extensive and indefinable a group or class as "all persons of the Jewish Religion."

There can be no doubt as to the defamatory nature of the publications mentioned in the instant indictment. They are palpably the outpourings of a fanatical and bigoted mind.

Nevertheless, they have been circulated for years and have never provoked a breach of the peace in this community, nor, in spite of their virulence, are they apt to.

As is so well pointed out in the briefs submitted by *amicus curiæ*, it is wiser to bear with this sort of scandalmongering rather than to extend the criminal law so that in the future it might become an instrument of oppression. We must suffer the demagogue and the charlatan in order to make certain that we do not limit or restrain the honest commentator on public affairs.

And when one realizes how many forms of religion might consider themselves libeled and seek legal redress, were our laws so extended, and when we reflect on how our courts might, in such event, find themselves forced into the position of arbiters of religious truth, it is apparent that more would be lost than could be gained by attempting to protect the good name of a religion by an appeal to the criminal law.

After a consideration of the briefs submitted by the People, the defendant and *amicus curiæ*, the court, on its own motion, and in the furtherance of justice, dismisses indictment No. 209220, which charges the defendant with libeling all persons of the Jewish religion.

And the court, on its own motion, and in the furtherance of justice, dismisses indictments Nos. 209221 and 209222, which charge libels against Frances Perkins and Virginia C. Gildersleeve, as these indictments on their face do not set forth a crime.